Albert A. Oppido, J.
The defendants, Howard M. Holder and Lynnor Gershenson, were indicted by the Grand Jury of Nassau *864 County on November 17,1970 for the crime of conspiracy in the first degree. The defendants were charged with conspiring to cause the felonious death of Joan Holder.
Defendant, Howard M. Holder, has moved, pursuant to CPL 710.20, to suppress eavesdropping evidence obtained by the People in its investigation of the death of Joan Holder, or in the alternative, to vacate the order dated August 28, 1970' and other orders based thereon. In his motion to suppress, this defendant contends (1) that the statute (Code Crim. Pro., §§ 813-j to 813-m; §§ 814 to 825),[1] authorizing the interception of the communications, was unconstitutional; (2) that, assuming arguendo that the statute was constitutional, neither its requirements nor those of the Fourth Amendment were satisfied, since there was no probable cause to issue an eavesdropping warrant; (3) that the application for this warrant was insufficient as a matter of law; and (4) that the order of August 28, 1970, signed by Judge Spitzer, failed to comply with the requirements of the statute authorizing the interception of telephonic communications.
The defendant Howard M. Holder also asserts that he is entitled to a hearing to determine whether the eavesdropping warrant was properly executed. For the reasons set forth below, defendant’s motion to suppress is granted to the extent hereinafter indicated.[2]
I. THE EAVESDROPPING ORDERS
On August 28, 1970, the Honorable Harold M. Spitzer of the County Court, Nassau County, signed an order, pursuant to section 813-a et seq. of the Code of Criminal Procedure, authorizing the interception by the District Attorney or Acting District Attorney of Nassau County and police officers acting under the supervision and control of these officials, of telephonic communications between a person unknown and fictitiously identified as “ John Doe ” and persons at the premises 873 Fulton Street, North Valley Stream, New York, in which the murder of Joan Holder was discussed. The telephone identification at premises 873 Fulton Street was given as 516-825-3352.
On September 8, 1970, Judge Spitzer amended the Order of August 28, 1970 and, as amended, the order authorized the previously designated officials to intercept and record telephonic communications over telephone bearing number 516-825-3352, in which Melvin Feil contacts Howard Holder and Howard Holder contacts Melvin Feil and others at premises 873 Fulton *865 Street, North Valley Stream, New York, and discusses the homicide of Joan Holder.
On September 11,1970, Associate Justice of the Appellate Division, Second Department, Samuel Rabin, signed an order authorizing the interception by the District Attorney or the Acting District Attorney and officials acting under their control and direction, of telephonic communications by and to Lynnor Rosenblatt Gershenson over a telephone bearing number 212-871-4313 located at premises 1314 46th Street, Brooklyn, New York, in which the homicide of Joan Holder was discussed by Lynnor Gershenson.
Judge Spitzeb,, on September 17,1970, signed an order extending the order of August 28, 1970, as amended by the order of September 8, 1970, and Justice Rabin on October 7, 1970 signed an order extending his order of September 11,1970.
II. CONSTITUTIONALITY OF SECTION 813-a ET SEQ. OF THE CODE OF CRIMINAL PROCEDURE
Defendant’s principal argument addressed to the constitutionality of the eavesdropping statute is that the statute does not adequately safeguard the individual’s right of privacy. Although not expressly stated, defendant seemingly contends that the statute involved herein violates the Fourth Amendment’s proscription against unreasonable searches and seizures, in that it authorizes electronic surveillance without providing adequate safeguards to personal privacy.
The court finds no merit in the “ invasion of privacy ” argument advanced by defendant. While it is true that the Supreme Court found various constitutional infirmities in the New York Eavesdropping Statute, section 813-a of the Code of Criminal Procedure[3] which was the predecessor to the statute currently *866 under consideration, implicit in the decision was the recognition that under proper judicial safeguards, eavesdropping would he permitted. This implication is manifested in Katz v. United States (389 U. S. 347). In that case, the Government introduced evidence of defendant’s portion of telephone conversations overheard by F. B. I. agents, who had attached an electronic listening and recording device to the outside of a public telephone booth from which defendant placed his telephone calls. The court reversed the case because no order had been obtained from a Judge authorizing the use of the device, but stated that: “ It is clear that this surveillance was so narrowly circumscribed that a duly authorized magistrate, properly notified of the need for such investigation, specifically informed of the basis on which it was to proceed, and clearly apprised of the precise intrusion it would entail, could constitutionally have authorized, with appropriate safeguards, the very limited search and seizure that the Government asserts in fact took place. Only last Term we sustained the validity of such an authorization, holding that, under sufficiently 1 precise and discriminate circumstances ’, a federal court piay empower government agents to employ a concealed electronic device ‘ for the narrow and particularized purpose of ascertaining the truth of the * * * allegations ’ of a ‘ detailed factual affidavit alleging the commission of a specific criminal offense ’ Osborn v. United States, 385 U. S. 323, 329-330.” (389 U. S. 347, 354-355).
This court has meticulously examined the eavesdropping statute in the context of the Berger and Katz decisions and concludes the statute meets the requirements of specificity, narrowness, particularity, and judicial supervision required by those cases and thus represents no violation qf the Fourth Amendment. Under sections 813-j to 813-m, and 814 to 825 of the Code of Criminal Procedure, an eavesdropping order could be issued only when a “ justice ”, as that term is defined in subdivision 4 of section 814, determined that there was probable cause to believe a specific designated offense had been, was being, or would bb committed, and that telephonic communication could reveal pertinent information. In addition, there were other precautionary measures embodied in the statute, e.g., that the communications to be intercepted had to he specifically described; that normal investigative procedures had to be shown to be inadequate or inappropriate; that the duration of the eavesdropping warrant had to be strictly limited; that efforts had to be made to minimize the intercepted communications which did not relate to the subject matter of the investigation; and that fre *867 quent progress reports had to be made to the authorizing Justice. The court’s conclusion that the statute is not unconstitutional is buttressed by the fact that contentions similar to those raised by defendant herein have been universally rejected by various Federal courts that have adjudicated cases involving the Federal statute (U. S. Code, tit. 18, §§ 2510-2520) upon which New York based the statute under consideration. (See United States v. King, 335 F. Supp. 523 [S. D. Cal., 1971]; United States v. Perillo, 333 F. Supp. 914 [D. Del., 1971]; United States v. Leta, 332 F. Supp. 1357 [M. D. Pa., 1971]; United States v. Scott, 331 F. Supp. 233 [Dist. C., D. C., 1971]; United States v. Cantor, 328 F. Supp. 561 [E. D. Pa., 1971]; United States v. Sklaroff, 323 F. Supp. 296 [S. D. Fla., 1971]; United States v. Cox, 449 F. 2d 679, 683-687 [C. A. 10th, 1971].)
In sum, the court concludes that New York’s eavesdropping statute is not unconstitutional.
m. SUFFICIENCY OF THE AFFIDAVITS IN SUPPORT OF THE ORDER OF August 28, 1970
I have read the affidavits of Detective Frank Cardone and acting District Attorney Edward Margolin, both sworn to on August 28, 1970, as well as the statement of Allan Holder, the brother of defendant Howard Holder, annexed to Detective Cardone’s affidavit and, for the reasons set forth, infra, I have concluded that the application was sufficient to justify the issuance of the eavesdropping warrant by Judge Spitzer on August 28, 1970.[4]
Defendant asserts that the eavesdropping application was insufficient as a matter of law in that it did not set forth a particular description of the type of communication sought to be intercepted, as required by section 817 (subd. 2, par. [b], subpar. [iii]) of the Code of Criminal Procedure; that it failed to set forth a full and complete statement as to why normal investigative procedures would have been unlikely to succeed, as required by section 817 (subd. 2, par. [d]); that it failed to set forth sufficient facts to justify the request of the People that the interception should not automatically ter *868 mínate when the communications sought had been obtained, as required by section 817 (subd. 2, par. [e]); and that the application did not set forth facts sufficient to establish probable cause as required by section 817 (subd. 2, par. [b], sub-par. [i]). These assertions shall be treated seriatim.
In the affidavit of Acting District Attorney Edward Margolin, the communications sought to be intercepted are described as follows: ‘1 The conversation sought to be seized consists of John ‘ Doe ’, a person unknown, calling over the telephone instrument bearing telephone identification number 516-825-3352, located within the premises 873 Fulton Street, North Valley Stream, County of Nassau, State of New York, concerning and dealing with the violent felonious death of Joan Holder.” It is the opinion of the court that this statement, confining the communications sought to those involving the felonious deáth of Joan Holder, describes the type of communications sought to be intercepted with sufficient particularity, as required by section 817 (subd. 2, par. [b], subpar. [iii]). (See United States v. Scott, 331 F. Supp. 233, 242, supra.)
In the affidavit of Detective Frank Cardone, the following statement is made: “Normal investigative techniques do not appear to be likely to succeed as the caller or callers indicated above [referring to two anonymous telephone calls received by Allan Holder at defendant’s home, at 2:20 a.m. and 2:40 a.m. on the day following the death of Joan Holder] have to this time used the telephone exclusively in their attempts to contact persons at the premises 873 Fulton Street, North Valley Stream, County of Nassau, and that normal investigative techniques could not under these circumstances lead to an identification of the caller or callers or to the securing of any further evidence in this crime.” It appears obvious to this court, from the affidavit of Detective Cardone that, in the particular circumstances of this case, viz., anonymous telephone calls to the Holder home in the early morning hours following the homicide of Joan Holder, normal investigative procedures, such as standard visual and aural surveillance, general questioning or interrogation under a grant of immunity, use of a regular search warrant, etc., appeared unlikely to succeed if tried. The purpose of section 817 (subd. 2, par. [d]) is to inform the authorizing Justice of the difficulties involved in normal investigative techniques and it is this court’s conclusion that the purpose and requirements of the section have been met. (See United States v. King, 335 F. Supp. 523, 535, supra.)
Detective Cardone’s affidavit also contained the following statement: “the order entered herein should not terminate *869 upon the interception of a single conversation inasmuch as it will be necessary to identify the unknown person or persons making said telephone calls [referring to the anonymous telephone calls previously referred to in. this opinion] and to ascertain their involvement in the crime of murder.” The court concludes that this statement, taken in context, of Detective Cardone’s entire affidavit, sufficiently apprised the authorizing Justice of the need for the continued interception of communications and met the requirements of section 817 (subd. 2, par. [e]).
We turn now to a consideration of whether the affidavits of Detective Cardone and Acting District Attorney Edward Margolin, together with the annexed statement of Allan Holder were sufficient to establish probable cause for the issuance of the eavesdropping warrant as required by section 817 (subd. 2, par. [b], subpar. [i]).
In considering the question of probable cause, we must keep in mind that ‘ ‘ the term ‘ probable cause ’ * * * means less than evidence which would justify condemnation” (Locke v. United States, 7 Cranch [11 U. S.] 339, 348) and that probable cause may be found ‘ ‘ upon evidence which is not legally competent in a criminal trial”. (United States v. Ventresca, 380 U. S. 102, 107; People v. Schnitzler, 18 N Y 2d 457, 460.) Further, the Magistrate cannot find probable cause upon the mere conclusions of an affiant, but must have details of the underlying circumstances upon which affiant bases his conclusions (Aguilar v. Texas, 378 U. S. 108; People v. Hendricks, 25 N Y 2d 129, 137). Moreover, the Supreme Court has said that probable cause refers to probabilities and that these are not technical but “ the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act ” (Brinegar v. United States, 338 UI. S. 160, 175; People v. Schnitzler, supra). Put another way, courts should interpret the affidavits in “ commonsense ”, rather than “ hypertechnical ”, manner (United States v. Ventresca, supra, p. 109; People v. Hendricks, supra). Finally, it must be kept in mind that, in determining the existence or lack of probable cause, this court can only look to the facts presented to the Justice who issued the order. (Rugendorf v. United States, 376 U. S. 528, 531; People v. Hendricks, supra, p. 138.)
Looking at all the affidavits and annexed exhibits, it is clear that the basis for probable cause is grounded on the information concerning two anonymous telephone calls received by defendant’s brother, Allan Holder, during the early morning hours of the day following the homicide of Joan Holder, *870 coupled with the details of Detective Frank Cardone’s investigation of the Holder home following the homicidal death of Joan Holder.
The affidavit of Detective Frank Cardone details the results of his investigation of the premises 873 Fulton Street, North Valley Stream, the scene of the homicide of Joan Holder in -the late evening of August 26, 1970 or the early morning hours of August 27, 1970. The affiant stated that there was no violent forcible entry into the premises; that items usually taken by persons engaged in the crime of burglary were not taken and remained in the premises, e.g., $40 in cash, a television set and minor appliances; that items taken from the premises were not those usually removed by persons engaged in the crime of burglary, e.g., a large jewelry box; and that the disarray evidenced in the bedroom of the premises (the exact scene of the homicide) did not reflect the modus operandi of persons who engage in the crime of burglary. The affiant further set forth for the court the bizarre nature of the cause of death of Joan Holder, viz., a rag or cloth unfound, soaked in chloroform and pressed over the nose and face of the decedent. In addition, Detective Cardone incorporated in his affidavit a statement received by him from Allan Holder, defendant’s brother. This statement related that in the early morning hours of August 28, 1970, Allan Holder was in the premises 873 Fulton Street; that at approximately 2:20 a.m., the telephone at the residence rang (telephone 516-825-3352); that Allan Holder answered the telephone; that a young male stated, ‘ ‘ Hello, Harold, this is the murderer ’ ’, and then hung up; that Allan Holder immediately notified the police of this telephone call; that at approximately 2:40 a.m. another telephone call came into premises, 873 Fulton Street; that Allan Holder answered the telephone; that an adult male, who identified himself as “Mike” asked to speak to Howard Holder; and that the caller hung up when requested by Allan Holder to further identify himself.
The above-mentioned circumstances are, ip the opinion of the court, clearly sufficient to meet the requirements of section 817 (subd. 2, par. [b], subpar. [i]). The issuing Justice was justified in concluding that a person, who identified himself as “ the murderer” was attempting to contact persons at the premises, 873 Fulton Street, and that another person, who identified himself only as “Mike”, was attempting to contact Howard Holder, the husband of the deceased. These circumstances, taken together with the details of the murder of Joan Holder, permitted the issuing Justice to conclude that *871 probable cause for the issuance of an eavesdropping warrant had been made out, and were clearly sufficient to meet the requirements of section 817 (subd. 2, par. [b], subpar. [i]).
In sum, it is the conclusion of the court that the affidavits submitted in support of the eavesdropping warrant were legally sufficient to comply with the requirements of section 816. of the Code of Criminal Procedure and thus authorize the issuance of the eavesdropping warrant.
IV. COMPLIANCE OF THE ORDER OF AUGUST 28, 1970 WITH THE STATUTE
In this section of the opinion, we treat defendant’s claim that the eavesdropping warrant, signed by Judge Spitzer on August 28, 1970, was invalid because it failed to contain a provision that the authorization to intercept had to be executed as soon as practicable and had to be conducted in such a way as to minimize the interception of communications not otherwise subject to eavesdropping.
For the reasons hereinafter set forth, the court concludes that the eavesdropping warrant under discussion is invalid as violative of subdivision 7 of section 819 of the Code of Criminal Procedure, which provides: ‘1 An eavesdropping warrant must contain * * # 7. A provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to eavesdropping under this title ”, as well as violative of. the Federal statute (U. S. Code, tit. 18, § 2518, subd. [5]).[5] TJnless the provisions of the Federal statute (U. S. Code, tit. 18, § 2510 et seq.) have been complied with, the contents of any intercepted communication and any evidence derived therefrom may not be received in evidence at the trial. (U. S. Code, tit. 18, § 2515.)
An examination of Berger v. New York (388 U. S. 41, supra) clearly demonstrates that the court was particularly concerned over the indiscriminate continuous intrusion permitted under the predecessor to the statute under consideration, section 813-a of the New York Code of Criminal Procedure. The court stated (p. 59): “ The statute’s failure to describe with particularity the conversations sought gives the officer a roving commission to 1 seize ’ any and all conversations. * * * During such a long and continuous (24 hours a day) period *872 the conversations of any and all persons coming into the area covered by the device will be seized indiscriminately and without regard to their connection with the crime under investigation. ’ ’
The court also stated that (p. 58): ‘ ‘ New York’s broadside authorization rather than being ‘ carefully circumscribed ’ so as to prevent unauthorized invasions of privacy actually permits general searches by electronic devices, the truly offensive character of which was first condemned in Entick v. Carrington, 19 How. St. Tr. 1029, and which were then known as ‘ general warrants ’.”
Moreover, the legislative history of title III of the Omnibus Crime Control and Safe Streets Act of 1968, section 2510 et seq. of title 18 of the United States Code, which statute was the model for the statute under discussion, demonstrates that Congress intended to draft a statute in conformity with Berger v. New York (supra) and Katz v. United States (supra). Thus Senate Report 1097 (90th Cong. 2d Sess., April 29, 1968) contains the following statement: ‘ ‘ Title III was drafted to meet these standards [standards set forth in Berger v. New York] and to conform with Katz v. United States, 88 Sup. Ct. 507, §89 U. S. §47 (1967).”
“ Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communication may be authorized. To assure the privacy of oral and wire communications, title III prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officers engaged in the investigation or prevention of specified types of sferious crimes, and only after authorization of a court order obtained after a showing and finding of probable cause.” (U. S. Code Cong. & Admin. News, 1968, p. 2153).
With regard to the particular provisions of the statute under consideration, the same Senate Report states in pertinent part (U. S. Code Cong. & Admin. News, 1968, p. 2192) that: “ All orders and extensions must be executed as soon as practicable and shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception .under this chapter.”
The court concludes that this provision, which the New York statute states “ must ” be contained in the order, is not me,rely directory but is mandatory. (See, e.g., People v. Haskell, 9 N Y 2d 729, 730.) This conclusion finds support in the only *873 two cases our research has uncovered that have considered eavesdropping warrants that failed to include a provision concerning minimization, viz., Cross v. State (225 Ga. 760); State v. Siegel (13 Md. App. 444).
The District Attorney argues that, although the eavesdropping warrant issued by Judge Spitzeb. does not contain provisions that the authorization to intercept should be conducted in such a way as to minimize the interception of communication not otherwise subject to eavesdropping and that the warrant should be executed as soon as practicable, the warrant, read as a whole, fulfills the legislative objective. He argues that, since the warrant specifies the parties and conversations which were the subject of the eavesdropping order and the warrant was to run from August 28,1970 to September 17,1970, a period of 20 days, these provisions were complied with. This argument is unpersuasive.
The provision naming the parties and conversations to be seized is specific authority to seize conversations between two identified persons and does no more than identify the person or persons whose constitutionally protected area is to be invaded, while the provision concerning minimization is designed to prevent the wiretap from turning into the kind of general search and wholesale invasion of privacy decried by the Supreme Court in Berger v. New York (supra). Put another way, the minimization provision protects the privacy of wire and oral communications that are unrelated to any criminal activity.
The requirement of the statute that the warrant be executed as soon as practicable is a directive that the warrant be executed before the showing of probable cause becomes stale. However, implicit in the phrase “ as soon as practicable ” is a recognition that a wiretap can take up to several days to install, but the intercepting officers must make a diligent effort to complete the installations as soon as possible. This provision for prompt execution is not met merely because the warrant runs for a maximum period of 20 days, for the showing of probable cause might well be stale if the police officers waited to install the wiretap until just before the end of the 20-day period. In addition thereto, the purpose of the 20-day period in the warrant is to prevent the issuance of blank warrants condemned in Berger v. New York (supra), and this purpose has nothing to do with prompt execution.
In sum, it is the court’s conclusion that the warrant issued by Judge Spitzeb was invalid as violative of Hew York’s eavesdropping statute.
*874 V. EXECUTION OF THE EAVESDROPPING WARRANTS BY THE POLICE — ■ THE MINIMIZATION ISSUE
In this portion of the opinion the court turns its attention to the actual execution of the eavesdropping warrant of August 28, 1970,[6] the amended warrant of September 8, 1970 and the extension warrant of September 17, 1970.
The defendant Holder, in his moving papers, requested a hearing to determine whether the warrant was properly executed so as to protect his rights as guaranteed by the Constitution and the statutory restrictions.
The court permitted defense counsel an opportunity to listen to the 60 tape recordings of conversations seized pursuant to Judge Spitzer’s original eavesdropping warrant dated August 28, 1970, the amended warrant, and the extension warrant. Since complete transcripts of the tapes were never prepared by the People, counsel for all parties to the action submitted to the court handwritten extracts setting forth the names of the parties to the conversations, the dates, the meter readings and the substance of the conversations, together with counsels’ analysis of the actual conversations that were seized. Over 400 handwritten pages were examined by the court, and after a painstaking examination of the material submitted, a careful analysis of the meter readings and a percentile evaluation of “ material ” conversation, the court concludes that the police engaged in an indiscriminate continuous surveillance of the Holder telephone, a practice condemned by the Supreme Court in Berger v. New York (supra).
The record reflects that, every conversation coming into and emanating from the Holder home was overheard and recorded in its entirety. The intercept was never cut off and the surveilling agents did not even attempt “ lip service ” compliance with the statutory mandate, but rather completely disregarded it. The record is devoid of any attempt, no matter how slight, to minimize the interception of unauthorized telephone calls.
Some of the most egregious examples were calls between members of the police department and police headquarters (reel 10, conversation 1; reel 12, conversation 16); calls between *875 Samuel Holder (defendant’s father) and the musician’s union to which he belonged (reel 17, conversation 21; reel 19, conversation 11; reel 33, conversation 5); calls between Samuel Holder and an automotive repair shop (reel 12, conversation 26; reel 15, conversation 6; reel 23, conversation 6; reel 33, conversation 8); calls between Samuel Holder and various doctors and dentists (reel 19, conversations 1 and 4; reel 23, conversation 2; reel 24, conversation 6); a call between defendant’s mother and the Medicare office (reel 32, conversation 4); and calls between defendant’s children and other children (reel 3, conversation 26; reel 5, conversations 3 and 7; reel 8, conversations 40 and 41; reel 13, conversations 2, 3, 12, 13, 14, 17 and 21; reel 15, conversations 5 and 10; reel 19, conversations 18 and 19:; reel 24, conversations 8, 9, 13, 15 and 25; reel 27, conversations 5, 6, 7 and 8; reel 40, conversations 7, 8 and 14; reel 41, conversations 9, 10, 12 and 13; reel 47, conversations 13, 14, 15, 16 and 18; reel 49, conversations 6, 9, 10 and 11; reel 55, conversations 6 through 14).
If this court were to sanction the indiscriminate interception of every conversation that took place over the defendant’s telephone and to sanction the monitoring of such calls even when it became clear that they were not remotely connected with the felonious death of Joan Holder, the result would be a complete negation of the protection to the right of privacy enunciated in Berger v. New York (supra) and Katz v. United States (supra) and contained in the eavesdropping statute. While this court recognizes the difficulty that monitoring agents may have in manning wiretaps' in a case involving a homicide, nevertheless, a certain amount of discretion must be exercised by the monitoring officials. From the record before this court, it appears that the police intended to glean every conceivable shred of relevant conversation from every telephone call, and thus they turned the eavesdropping warrant into a general search warrant and totally disregarded the direction in the warrant to conduct the interception in such a way as to minimize the interception of communications not otherwise subject to interception. Such a practice cannot be countenanced by this court.
In the court’s judgment, fewer than 10% of the intercepted communications could have been listened to in their entirety by the intercepting officials. That being the case, the court declines to adopt the approach of Judge Nielsen in United States v. King (335 F. Supp. 523, supra) in which only the unauthorized intercepted communications were suppressed. *876 Bather, the court follows the solution adopted by Judge Waddy in United States v. Scott (331 F. Supp. 233, supra) in which all communications seized were suppressed, for, in this court’s opinion, only by imposing such a severe penalty will compliance in the future be guaranteed.
Furthermore, Congress in enacting title III of the Omnibus Crime Control and Safe Streets Act of 1968, declared that two of the purposes of title III were “to protect the privacy of wire and oral communications ’ ’ and ‘ ‘ to protect the integrity of court and administrative proceedings ”. (U. S. Code Cong. & Admin. News, 1968, p. 2177.) In this court’s view, only by imposing a prophylactic rule can the court effectively protect itself from becoming an unwilling participant in illegal governmental activity and protect the privacy of citizens.
Accordingly, it is
Ordered that defendant’s motion to suppress is granted and all 60 intercepted telephonic communications, tape recordings, transcripts and evidence obtained, either directly or indirectly, as a result of the intercept authority of August 28, 1970, September 8, 1970 and September 17, 1970, are suppressed.

. These sections have been re-enacted almost verbatim in the CPL art. 700, eff. Sept. 1, 1971.

. The court, on April 6, 1972, rendered an oral decision from the Bench.

. The court described the defects in section 813-a of the Code of Criminal Procedure as follows: (1) The New York statute contained no requirement for particularity in describing the place to be searched and the person or thing to be seized; in describing the crime that has been, was being, or was about to be committed, and in describing the type of conversation sought; (2) additionally, the statute placed no limitations on the officer executing the eavesdrop order which would prevent his searching unauthorized areas and prevent further searching once the property sought was found; (3) the statute also did not limit the surveillance to one limited intrusion, nor did it require prompt execution of the warrant; (4) furthermore, the statute authorized eavesdropping for up to a two-month period on a single showing of probable cause; (5) moreover, the statute permitted an extension of undefined duration on a bare showing that such extension would be in the public interest; (6) the statute also placed no mandatory termination on the wiretap once the conversations sought were seized; and (7) lastly, the statute had no requirement for notice nor did it overcome this defect by requiring a showing of exigent circumstance. (Berger v. New York, 388 U. S. 41, 56-60).

. The defendant has attacked only the affidavits in support of the order signed by Judge Spitzer on August 28, 1970 and has not alleged any infirmity with respect to the affidavits in support of the amended order of September 8, 1970, nor of the extension order of September 17, 1970. Moreover, defendant has made no claim of insufficiency with respect to the orders signed by Justice Rabin on September 11,1970 and October 7,1970, but merely asserts that if the August 28, 1970 warrant is declared invalid, all subsequent warrants should be invalidated as well.

. The Federal statute (U. S. Code, tit. 18, § 2518, subd. [5]) is virtually identical to the provision of our subdivision 7 of section 819, except that the Federal statute employs the phrase “an eavesdropping warrant shall contain” instead of the phrase “an eavesdropping warrant must contain ”,

. For purposes of this discussion, the warrant of August 28, 1970 is assumed to contain the same provision as to minimization that is contained in the two later warrants, viz.,
“ ordered, that the aforesaid District Attorney or Acting District attorney and any and all police officers employed under his or their supervision or control he and hereby are authorized to intercept, monitor and record said conversations in such manner as to minimize the interception of communications not otherwise subject to eavesdropping during the daytime or nighttime hours ”.