Habold M. Spitzes, J.
The defendant, Pasquale Fusco, has made five omnibus motions to suppress evidence; all of the 49 defendants join in these motions. Each motion is addressed to one of a series of five interrelated wiretap orders issued in 1972. The first order was issued by the Hon. Paul Kelly on April 25, 1972 authorizing the interception of communications made over a telephone being used by defendant Tim Gabriel, otherwise known as court order No. 3-72, hereinafter referred to as GO-3. On May 18, 1972, the Hon. Frank A. Gulotta authorized the interception of communications made over a phone used by two males known as “ Angelo ” and “ Bobby ”, otherwise known as court order No. 4-1972, hereinafter referred to as CO-4. On May 26, 1972, Mr. Justice Gulotta issued an order authorizing the interception of conversations made over a telephone being used by “ Joey ”, otherwise known as court order No. 5-1972, hereinafter referred to as CO-5. On June 15, 1972, the same *983 Justice issued an order authorizing the interception of conversations made over a telephone used by defendant John J. Savino, otherwise known as court order No. 6-1972, hereinafter referred to as CO-6. On June 22, 1972, an order authorizing the interception of conversations made over a phone used by “ John Doe ” and “ Richard Doe ”, otherwise known as court order No. 7-1972, hereinafter referred to as CO-7, was signed by Mr. Justice G-ulotta. These five motions are largely repetitive and the following is the court’s decision pertaining to all of these motions.
Upon oral argument the defendants contended that this court, which is the trial court, is not the proper forum for the determination of what they describe as motions to contravene the wiretap orders. They argue that the motions ought to be referred to the issuing Judge and Justice. On oral argument defense counsel said: “ We now have here a situation of collateral appeal: where a member of the Bench who is not as high as the two signing judges is asked to review their decision on the issuance of the wiretap order. ” In support of this argument, counsel cites People v. Gray (61 Misc 2d 769), which case was decided before the Criminal Procedure Law came into force.
While the defendants’ contention is not without logic, this court is constrained by statute and the clear legislative intent expressed therein to hear and decide these motions. CPL article 710 governs motions to suppress. CPL 710.20 (subd. 2) provides for the suppression of evidence including the suppression of conversations overheard or recorded by means of eavesdropping. CPL 710.50 (subd. 1, par. [a]) provides that when an indictment is pending in a superior court, the motion to suppress must be made in the superior court in which such indictment is pending. Therefore, this court, as the trial court, possesses jurisdiction to entertain and decide these motions.
(i). The defendants seek to set aside and vacate the wiretap orders upon the ground that CPL article 700 covering “ Eavesdropping Warrants ” fail to conform to the Federal requirements of title III of The Omnibus Crime Control and Safe Streets Act of 1968 (U. S. Code, tit. 18, ch. 119, § 2510 et seq.). Defendants argue that the Federal statute requires that an applicant for such orders be the principal prosecuting authority of the State or the principal prosecuting attorney of a political subdivision thereof, and that the State Legislature exceeded its authority by enabling an application to be made by others. CO-3 and CO-7 were issued upon the application of Edward Margolin, Acting District Attorney of Nassau County.
*984 Subdivision 4 of section 702 of the County Law provides that where there are two or more Assistant District Attorneys, the District Attorney shall designate in writing and file in the office of the County Clerk, and the Clerk of the Board of Supervisors, the order in which such assistants shall exercise the powers and duties of the office in the event of a vacancy or when the District Attorney is absent or disabled.
Subdivision 3 of section 702 of the County Law provides “ The assistant during the absence or inability of the district attorney shall perform the powers and duties of the office of district attorney ’ Thus, when the District Attorney is absent or disabled, his designated assistant assumes the primary responsibility for the initiation and prosecution of criminal cases within the county and is, in fact, “ the principal prosecuting attorney ” pro tempore.
CPL 700.05 (subd. 5) authorizes “ a district attorney or the attorney general ’ ’ to apply for wiretap orders. If, however, a District Attorney or the Attorney-General is actually absent or disabled, that person 11 designated to act for him and perform his official function in and during his actual absence or disability ’ ’ may make such application.
The above section conforms to the Federal requirements, inasmuch as the designated Assistant District Attorney is both (a) “ the principal prosecuting attorney ” of the county, and (b) authorized by statute law to apply for a wiretap order, when the District Attorney is actually absent or disabled.
(ii). The defendants argue that the applications for CO-3 and CO-7 are defective by reason of the Acting District Attorney’s failure to allege facts tending to establish his authority to make the applications. The applications in question state simply: 11 EDWARD mabgolin, being duly sworn, deposes and says: I am the Acting District Attorney of the County of Nassau, State of New York, .pursuant to Criminal Procedure Law, Section 700.05(5).” The provisions of CPL 700.05 (subd. 5) and subdivisions 3 and 4 of section 702 of the County Law, dealing with the authority of an Assistant District Attorney to make application for a wiretap order, have hereinabove been discussed.
CPL 700.20 sets forth the requirements for an application to authorize eavesdropping. Subdivision 2 of that section specifies • what an application must contain. It speaks both of ‘ ‘ statement ’ ’ and ‘ ‘ statement of facts ’ ’. Thus, an application must contain a “ full and complete statement of facts establishing that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried”. (CPL *985 700.20, subd. 2, par. [d]). In contrast, the application need only contain “a statement of the applicant’s authority”. (GPL 700.20, subd. 2, par. [a].)
In the instant case there is “ a statement of the applicant’s authority ’ ’ for the application states ‘ ‘ I am the Acting District Attorney ’ ’ and then cites the relevant statutory provision. This sufficiently satisfied the statute.
Additionally, defendants allege that the United States Code (tit. 18, § 2516, subd. [2]) authorizes applications for eavesdropping orders in an investigation of “ gambling ”, and since “ gambling ” per se is not a crime in Hew York, New York Law cannot constitutionally permit eavesdropping in investigating violations of section 225.05 through section 225.20 of the Penal Law. In support of this argument defendants cite the definition of “ gambling ” in subdivision 2 of section 225.00 of the Penal Law and the fact that casual betting is not a crime. (See Penal Law, §.225.00, subd. 9.)
Subdivision (2) of section 2516 of title 18 is a Federal statute and must, therefore, be construed under Federal, not New York law. While “ gambling ” is not defined in sections 2511 through 2520 of title 18 of the United States Code, it is used and defined elsewhere in the Federal Code of Crimes and Criminal Procedure (U. S. Code, tit. 18). Thus section 1511 of title 18 of the United States Code prohibits a conspiracy to obstruct the enforcement of State criminal laws with intent to facilitate an illegal gambling business. “ Gambling ” is defined therein (subd. [b], par. [2]) as follows: “ 1 gambling ’ includes but is not limited to pool-selling, bookmaking, maintaining slot machines ”. (Emphasis supplied.) An identical definition appears in section 1955 (subd. [b], par. [2] of title 18, which makes it a Federal crime to conduct a gambling business. Finally chapter 50 of the Federal Code of Crimes and Criminal Procedure (U. S. Code, tit. 18), which chapter is entitled ‘ ‘ Gambling ’ ’, defines (§ 1081) the term “ gambling establishment ” as “ any common gaming or gambling establishment operated for the purpose of gaming or gambling, including accepting, recording or registering bets ”.
Statutes in pari materia are to be construed harmoniously. (Town of Putnam Valley v. Slutzky, 283 N. Y. 334.) Therefore, in view of the meaning assigned the term “ gambling ’’elsewhere in the Federal Code of Crimes and Criminal Procedure, the court concludes that, when Congress authorized State eavesdropping in investigations of “gambling”, it intended “to equip the state’s law enforcement officials with the necessary *986 tools to investigate and combat * * * bookmaking, and similar operations * * * which come within the generic phrase, the offense of gambling.” (United States v. Lanza, 341 F. Supp. 405, 413.)
Since the crimes defined in section 225.05 through section 225.20 of the Penal Law all include illegal bookmaking enterprises, this court finds that New York Law may constitutionally authorize wiretaps in investigating the violation of those statutes. It is noted in passing that violations of section 225.05 through section 225.20 of the Penal Law are “Designated offense[s] ” within CPL 700.05 (subd. 8).
(iii) . Defendants allege that Mr. Margolin was not duly authorized by law to make the application.
As noted above, the applications state: “I am the Acting District Attorney * * * pursuant to Criminal Procedure Law, Section 700.05(5).” CPL 700.05 (subd. 5) provides that an Assistant District Attorney may apply for an eavesdropping order during the actual absence or disability of the District Attorney. The defendants would have us require that the applicant specifically allege facts showing the absence or disability of the District Attorney. To require more than the statement made in the instant case unnecessarily complicates the application. If an applicant lacks authority, a defendant’s proper recourse would be by way of a motion to suppress evidence which is governed by CPL 710.60. That section requires that a motion to suppress contain sworn allegations of fact supporting the ground alleged for suppression. (CPL 710.60, subd. 1.) Here the motion papers contain no such allegations. The absence or disability of the District Attorney is not challenged. Defendants do not allege that there was a failure to comply with subdivision 4 of section 702 of the County Law which is a matter of public record ascertainable from either the County Clerk or the Clerk of the Board of Supervisors. Therefore, the defendant’s request to set aside and vacate the orders on that ground and for a hearing, is denied. (CPL 710.60, subd. 3, par. [b].)
(iv) . Defendant alleges that the interceptions were carried out illegally and in violation of laws, contrary to the direction of the orders.
The eavesdropping orders authorized law enforcement officials: “ to cut, break, tap and make connection with any and all lines leading to and from the said telephone instrument and to do all things lawfully necessary to permit the communications being transmitted over the said telephone instrument to be *987 intercepted ”. The defendants contend that “other than trespassing upon the telephone wires themselves the authorities' had no license to otherwise disobey the law, and it is suggested * * * that the possibility of illegal conduct exists which would be violative of the order.” The defendants, therefore, seek a hearing which would, in fact, be a discovery proceeding, “ to determine the method, manner and possible illegality in the execution of the warrant.”
The defendants have alleged no facts as required by GPL 710.60 (subd. 1) to justify their request for a hearing. This portion of the motion is, therefore, denied without prejudice to renewal upon proper papers.
(v) and (vi). The defendants make a sweeping attack upon the existence and reliability of the informant. They contend that the applications are defective for failure to state the basis of the informant’s knowledge, to specify the date of the tip more precisely than “April of 1972”, and to establish the existence and reliability of the informant.
The same tip contributes to the finding of probable cause in each of the five wiretap orders. In each succeeding application the reliability of the informant gains further support from the wiretaps already undertaken. Consequently, if the tip is found to be sufficiently reliable for the purposes of CO-3, it is sufficiently reliable for all four subsequent warrants a fortiori.
The informant furnished Detective Hayes with five pieces of information:
1. That defendant Tim Gabriel was engaged in bookmaking;
2. That Tim Gabriel operated his bookmaking activities from his place of business, the Centre Fruit Market in Valley Stream;
3. That Tim Gabriel was a 1 ‘ hedge ’ ’ who accepted bets from other bookmakers over the telephone located in the Centre Fruit Market and bearing the number VA 5-1230;
4. That Tim Gabriel was working for a larger gambling organization; and
5. That Tim Gabriel met with members of this larger gambling operation on Monday or Tuesday of each week for the purpose of settling debts incurred during* the prior week’s betting activities.
The leading cases on the reliability of undisclosed informants are Aquilar v. Texas (378 U. S. 108); Spinelli v. United States (393 U. S. 410); and People v. Hendricks (25 N Y 2d 129). These cases enunciate a two-pronged test. As stated in People v. *988 Hendricks (supra, p. 133): “ that test requires that the affidavit show (1) whether the informant is in fact reliable, and (2) whether the underlying circumstances as to how the informant came by his information demonstrates sufficient probability of credibility to allow the search of the premises or person in question.”
The first prong of the test may be met (p. 133) by “ a separate objective checking of the informant’s tale ”, In the instant case, the police undertook and accomplished just such a verification. They had the informer dial the number he had supplied while they watched. They listened as he identified himself and asked for “ Tim”. They then'heard him place a wager on a horse which was running that day at Aqueduct Racetrack. Another police officer' already had the Centre Fruit Market under surveillance. He reported that he had observed a number of individuals consulting racing charts and newspapers outside the premises. These individuals would enter the Centre Fruit Market and proceed to a room in the rear only to emerge shortly thereafter having purchased nothing. One of these persons was seen to approach a male believed to be defendant Tim Gabriel and, while they conversed, handed Gabriel slips of paper which were accepted. Another policeman entered the Centre Fruit Market on April 21, 1972 (only four days before CO-3 was signed). While there he heard a telephone ring in the rear and a male voice apparently answered. The male voice said: “ You want Sail Ahoy for ten in the second? You got it.” The telephone bearing the number VA 5-1230 which was given to the police by the informant was checked and found to be located in the Centre Fruit Market. The emergency business index confirmed that Tim Gabriel was the owner of that business.
This verification of the tip supplied by the informant provides sufficient evidence of reliability to satisfy the first prong of the Aquilar-Spinelli-Hendricks test. (See People v. Coffey, 12 N Y 2d 443, 452, cert. den. 376 U. S. 916), “ the principal elements of his [the informant’s] story were checked out and found plausible. ” (See, also, People v. Fino, 14 N Y 2d 160, 163, citing Smith v. State, 191 Md. 329; and United States v. Woodson, 303 F. 2d 49.) (Cf. People v. Richardson, 36 A D 2d 603, affd. 29 N Y 2d 802.) Indeed, standing alone and divorced from the tip, the information gathered by the police during their investigation approaches, and may in fact constitute, sufficient probable canse to support CO-3. (See People v. Coscia, 26 A D 2d 649; cf. People v. Valentine, 17 N Y 2d 128; People v. Goldberg, 19 N Y 2d 460; People v. Capone, 35 Misc 2d 1071.)
*989 The Hendricks decision suggests that the second prong of the Aquilar-Spinelli-Hendricks test can be met in one of the following three ways:
1. Independent observation made by the police;
2. The information supplied being so detailed as to remove it from the category of rumor; or
3. The affidavit clearly shows that the informant spoke from first-hand knowledge.
It is to be noted that the first alternative, independent observation by the police, parallels the independent verification used to satisfy the first prong of the test. Thus, an independent investigation may serve to satisfy both prongs of the test, that is, it may establish both the reliability of the informant and the credibility of the information he has supplied. This is the situation in the present case. The independent observations and investigation by the police confirmed the tip, thus establishing both the reliability of the informant and the credibility of his information. (See People v. Cerrato, 24 N Y 2d 1; People v. Schnitzler, 18 N Y 2d 457; People v. Coffey, 12 N Y 2d 443, cert. den. 376 U. S. 916, supra.) It is further noted that the information supplied to the police was fairly detailed and, in some respects, obviously based on first-hand knowledge.
The court finds that both prongs of the Aquilar-SpinelliHendricks test have been met and defendants’ contentions are without merit.
(vii), (viii) and (xi). Defendants contend that the applications fail to allege facts constituting probable cause of the commission of any crime; or that such communications will be obtained; or that the facilities from which or the place where the communications were to be intercepted were being used to further the crimes alleged.
The probable cause required for the issuance of an eavesdropping order is the same as that required for a search warrant. (People v. Kaiser, 21 N Y 2d 86, affd. sub nom. Kaiser v. New York, 394 U. S. 280.) The concept has found various expressions. It is said to exist when there is a reasonable ground of suspicion supported by facts and circumstances strong enough to warrant a cautious and prudent man to believe that the law was, is or will be violated. ‘ ‘ The question always is: what in the common judgment of reasonable men would be regarded as good, sound cause, remembering that we seek only probable, not absolute cause? ” (People v. Fino, 14 N Y 2d 160, 162, supra.) (See, also, People v. Marshall, 13 N Y 2d 28; People v. Russek, 49 Misc 2d 484.)
*990 Probable cause refers to probabilities which are the “ factual and practical considerations of everyday life on which reasonable and prudent man, not legal technicians act.” (Brinegar v. United States, 338 U. S. 160, 175; People v. Schnitzler, 18 N Y 2d 457, supra; People v. Holder, 69 Misc 2d 863, 869).
In determining whether the applications in the instant case are sufficient to establish probable cause, we bear in mind that: “ The Fourth Amendment’s commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court’s cases are to be followed and the constitutional policy served, affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.” (United States v. Ventresca, 380 U. S. 102, 108; cited with approval United States v. Harris, 403 U. S. 573, 577). This mandate is especially relevant in the present case for, ‘ ‘ When a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner. ’ ’ (United States v. Ventresca, supra, p. 109.)
Here the defendants contend that the various applications fail to allege facts sufficient to establish probable cause to believe that they were engaged in more than casual betting, that the bookmaking enterprise did a volume sufficient to constitute the first degree crimes of promoting gambling and possession of gambling records, or that communications with regard to the crimes alleged would be intercepted. Moreover, they seek a hearing on these questions.
With regard to CO-3, the court has hereinabove discussed at length the informant’s tip and the verification thereof through an independent police investigation. The court noted in passing that the police investigation, standing alone and divorced from the tip, had provided information which approaches, and may in fact constitute, sufficient probable cause to support CO-3. Taking the tip and the investigation together, the facts alleged in support of the application for CO-3 clearly establish probable cause.
CO-3 recites that there is probable cause to believe that crimes are being committed and evidence thereof may be obtained by intercepting communications. It then authorizes the interception of communications relative to a conspiracy to violate section 225.05 and subdivision 1 of section 225.15 of the Penal Law as well as actual violations of section 225.05 and subdivision 1 of section 225.15 of the Penal Law. CO-4, CO-5, CO-6 and CO-7 are similar except that they add sections 225.10 and 225.20 of *991 the Penal Law both in reference to the conspiracy and to the actual crimes.
The defendants contend that there was no probable cause to believe that they were engaged in more than casual betting. The basis of this argument is subdivision 9 of section 225.00 of the Penal Law which defines “ Bookmaking ” to mean “ advancing gambling activity by unlawfully accepting bets from members of the public as a business, rather than in a casual or personal fashion ”. (Emphasis supplied.) The facts alleged in the affidavits in support establish probable cause to believe that the defendants were engaged in more than casual or personal betting. (People v. Capone, 35 Misc 2d 1071, supra.)
The defendants contend that there was no probable cause to believe that they were engaged in the first degree offenses of promoting gambling (Penal Law, § 225.10) and possessing gambling records (Penal Law, § 225.20) since there was no evidence of the requisite volume. As noted above CO-3 does not refer to the first degree offenses and therefore the argument as applied to CO-3 is moot.
The defendants’ contention that there was no probable cause to believe that conversations regarding the crimes alleged were likely to be intercepted, is without merit. The facts alleged establish probable cause to believe that the crimes were being committed and that the telephones in question were being used in furtherance.
Finally, defendants’ contention that there was no probable cause for the issuing Judge and Justice to believe that the telephones in question were being used in furtherance of the crimes alleged, is without merit.
What has been said of CO-3 applies as well to CO-4, CO-5, CO-6 and CO-7. Defendants’ contention that the applications were defective for failure to establish probable cause to believe that the first degree offenses were being committed, is without merit. The allegation of the first degree offenses is superfluous since the second degree crimes, which require no specific volume, are designated offenses within CPL 700.05 (subd. 8, par. [c]). Thus, as CO-3 illustrates, the wiretap orders could issue without the first degree crimes being alleged. Moreover, the facts alleged support a finding of probable cause to believe that the first degree crimes were being committed. (People v. Capone, 35 Misc 2d 1071, supra.)
In all four orders subsequent to CO-3, the facts alleged in support include conversations overheard under the prior wiretaps in this series of five. These conversations combined with *992 the facts alleged in regard to CO-3 provide sufficient probable cause to believe that the bookmaking was more than casual betting and that conversations with regard to the crimes alleged would be intercepted.
(ix). CPL 700.20 (subd. 2, par. [d]) requires that an application for an eavesdropping order contain: “(d) A full and complete statement of facts establishing that normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ, to obtain the evidence sought ’ ’. The defendants contend that the various applications here under challenge fail to comply with this provision.
With respect to CO-3, the issuing Judge correctly determined that normal investigative techniques reasonably appeared to be unlikely to succeed. An informer had placed a wager, but Detective Hayes, based upon his experience as an expert on illegal gambling activities, averred that bets would not be accepted from individuals unknown to the bookmaker. The observations at the Centre Fruit Market, while indicative of illegal bookmaking, did not suggest that strangers would be admitted to the rear room where the betting was apparently conducted. Thus, the court could conclude that normal investigative techniques, though successful in establishing probable cause, were unlikely to produce the kind of evidence necessary to sustain convictions.
Moreover, the informer had stated that Tim Gabriel and the operation at the Centre Fruit Market were but a part of a larger gambling network. In Draper v. United States (358 U. S. 307, 313), the United States Supreme Court said: “ And surely, with every other bit of Hereford’s information being thus personally verified, Marsh had £ reasonable grounds ’ to believe that the remaining unverified bit of Hereford’s [the informant’s] information — that Draper would have the heroin with him — • was likewise true.”
In the instant case, all the information about Tim Gabriel had checked out except, perhaps, his connection with a larger gambling organization. The only evidence of this connection, other than the tip, was the individual who had been observed handing slips of paper to Tim Gabriel. However, all the other information supplied by the informant having been verified, the police and the court were entitled to believe it probable that such a connection existed. The only way to learn of the larger organization was through tapping the phone Tim Gabriel was using for his gambling activities. In the application for CO-3, *993 the Acting District Attorney states that based on police expertise and his own experience in law enforcement: ‘ ‘ normal investigative procedures, such as surveillance, would be unlikely to succeed if tried as it would merely tend to disclose the involvement of Tim Gabriel in unlawful gambling activity but would fail to disclose the involvement of his unknown associates. ’ ’
Since we find that the issuing Judge properly concluded from the facts before him that normal investigative techniques were likely to fail to secure evidence against the principals in the gambling conspiracy, this portion of the defendants’ motion is without merit.
All that has been said in reference to CO-3 applies equally to CO-4, CO-5, CO-6 and CO-7. Additionally, .in the case of each order subsequent to CO-3, the informant’s allegation of a larger betting network is verified by the conversations intercepted under the prior wiretap orders in this series of five. Thus, the defendants’ argument is without merit as to CO-4, CO-5, CO-6 and CO-7.
(x). CPL 700.20 (subd. 2, par. [b], cl. [ii]) requires “a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted ’ ’. Defendants contend the applications fail in these respects. Each eavesdropping order gives the telephone number identifying the phone to be tapped. Each order describes the premises in which the phone is located by type of building, whether it is a dwelling or business premises, by street address, town, county or borough and city. Where applicable, the room or floor where the phone is located is also provided. The court finds this to be a sufficient particularization of 1 ‘ the place where the communication is to be intercepted ’ ’. Any deficiency in such descriptions is certainly de minimis.
(xii); The defendants contend that the description of the conversations sought is overly broad and exceeds the interception which the facts alleged would justify. The court has held (supra) that the issuing Justices had probable cause to believe that Penal Law sections 225.05 and 225.15 (as well as §§ 225.10 and 225.20 where applicable) were being violated and that there was a conspiracy to violate those sections of the Penal Law. The eavesdropping orders authorize interception only of conversations involving these crimes. The orders also limit the interception to conversations over the designated phones to which one of the designated individuals is a party. Thus, the description of the conversations sought is sufficient and the interception *994 authorized not overly broad. (People v. Gnozzo, 31 N Y 2d 134, 142.)
Therefore, this ground for setting aside and vacating the .order is without merit.
(xiii) . The defendants argue that the continuation of the five wiretaps for the full 30-day period violated their rights. In the context of a gambling investigation, the New York Court of Appeals has said: ‘ ‘ For this type of interception a 30-day period, given the extent and nature of the activity under surveillance, is not excessive.” (People v. Gnozzo, 31 N Y 2d 134, 141.) “ While the statute is clear that a wiretap should not last any longer than is necessary to achieve its objectives, and in no event ‘ longer than thirty days ’ (CPL 700.10, subd. 2), the time during which such wiretap continues must reasonably relate to the kind of conversations being sought and the crime involved. In this case, where, the suspected crime involves extensive gambling activity it does not appear unreasonable to allow the tap to continue the full 30 days.” (People v. Castania, 73 Misc 2d 166, 168.) The investigation here was of extensive illegal gambling activity. Under Gnozzo and Castania it is permissible for wiretaps in such cases to extend for the full 30-day period.
Therefore, this ground for relief is without merit.
(xiv) . Defendant alleges that the applications fail to contain a full and complete statement of facts concerning previous application.
CPL 700.20 (subd. 2, par. [f]) requires that an application for an eavesdropping contain: “ (f) A full and complete statement of facts concerning all previous applications, known to the applicant, for an eavesdropping warrant involving any of the same persons, facilities or places specified in the application, and the action taken by the justice on each such application.” (Emphasis supplied.) It is to be noted that this requirement is stated in the disjunctive. In response to this requirement each application has a statement phrased in the conjunctive. Thus, we have a technical defect in each warrant application. However, the defect violates no substantial right and is de minimis. Therefore, this technical defect is not a ground for suppression. (See People v. Solomon, 74 Misc 2d 926; People v. Sher, 68 Misc 2d 917.)
(xv) . The defendants contend that the various eavesdropping orders do not adequately provide for minimization (CPL 700.30, subd. 7). They request a hearing “ in the event the warrant is not deemed insufficient on its face ”. The warrant .sufficiently provides for minimization. No facts have been presented which *995 would justify granting a hearing at this time. Application for the inspection of the tapes may be made to the issuing Judge or Justice. (CPL 700.50, subd. 3.) Therefore, this ground for relief is denied with leave to renew on a proper showing.
(xvi). This ground pertains only to defendant Pasquale Fusco, for a failure to .serve notice is alleged only as to him. CPL 700.50 (subd. 3) provides: “ Within a reasonable time, but in no case later than ninety days after termination of an eavesdropping warrant * * * written notice of the fact and date of the issuance of the eavesdropping warrant, and of the period of authorized eavesdropping, and of the fact that during such period communications were or were not intercepted, must be personally served upon the person named in the warrant and such other parties to the intercepted communications as the justice may determine in his discretion is in the interest of justice.” The People aver that personal service upon Pasquale Fusco was made, and have furnished a copy of the affidavit of service and, therefore, this portion of the motion is denied.
There are several other grounds alleged in the moving papers upon which the defendants seek relief.
A. The defendants contend that because evidence gathered pursuant to CO-3 was used to support the application for CO-4, and ultimately the three subsequent orders, the defects of the prior order or orders also require a vacatur of their fruits. The court has found no defects requiring suppression of the evidence accumulated under CO-3, nor are there any such defects in CO-4, CO-5 and CO-6. Therefore, this ground for suppression is without merit.
B. With respect to the territorial jurisdiction of the District Attorney and police, CO-4 and CO-6 authorized wiretaps on telephones located in Queens County, while CO-5 and CO-7 authorized taps on phones in Brooklyn (Kings County). The Nassau County District Attorney or Acting District Attorney applied for and the Nassau County Police executed each of these eavesdropping orders. The defendants contend that in doing so they exceeded their territorial jurisdiction.
CPL 700.10 authorizes a Justice to issue an eavesdropping warrant upon the ex parte application of an applicant authorized by law to prosecute the particular designated offense which is the subject of the application. The District Attorney of any county is authorized to prosecute any crime or offense cognizable by the courts of the county for which he shall have been elected or appointed. (County Law, § 700.) To determine what crimes and offenses are cognizable by the courts of Nassau County we *996 must look to CPL 20.40 which provides, in part, as follows: “ A person may be convicted in an appropriate criminal court of a particular county, of an offense of which the criminal courts of this state have jurisdiction * * * committed either by his own conduct or by the conduct of another for which he is legally accountable pursuant to section 20.00 of the penal law, when:
‘ ‘ 1. Conduct occurred within such county sufficient to establish: * * *
“ (b) An attempt or a conspiracy to commit such offense; or
‘ ‘ 2. Even though none of the conduct constituting such offense may have occurred within such county: * # *
“ (d) The offense committed was attempt, conspiracy or criminal solicitation to commit a crime in such county ”. (Emphasis supplied.)
Additionally, subdivision 1 of section 105.25 of the Penal Law provides: “A person may be prosecuted for conspiracy in the county in which he entered into such conspiracy or iii any county in which an overt act in furtherance thereof was committed.” (Emphasis supplied.)
In the instant case the facts alleged in support of the various applications established probable cause to believe that there was a conspiracy to violate sections 225.05 and 225.15 of the Penal Law (and, where applicable, §§ 225.10, 225.20). The activities of defendant Tim Gabriel which occurred in Nassau County werS acts in furtherance thereof. Thus, the Nassau County courts, and hence the Nassau County District Attorney, had jurisdiction. (Accord People v. Sher, 68 Misc 2d 917, supra.)
While no reference is made of CPL article 700 to the territorial jurisdiction of the agency executing a wiretap order, warrants addressed to a law enforcement agency whose jurisdiction encompasses the entire county in which the issuing court is located are generally executable anywhere in the State. (CPL 690.25 [search warrants]; CPL 120.60, subd. 2; and 120.70, subd. 1 [arrest warrants].) Therefore, the defendants’ contention that the Nassau County police cannot execute warrants beyond the borders of Nassau is without merit.
C. The defendants contend that the affidavits of the District Attorney or Acting District Attorney for CO-5, CO-6 and CO-7 should be disregarded since they merely restate those matters contained in other supporting affidavits. CPL 700.20 (subd. 8) provides that, ‘‘ Allegations of fact in the application may be based either upon the personal knowledge of the applicant or upon information and belief * * * Affidavits of persons other than the applicant may be submitted ’ ’. Thus, the affi *997 davits of the District Attorney or Acting District Attorney are in proper form. Whether they contribute to a finding of probable cause is another question. In any event, the court has already found that the applications sufficiently establish probable cause.
D. The defendants’ criticism of the applications for CO-5, CO-6 and CO-7 as conclusory, is without merit. (Aguilar v. Texas, 378 U. S. 108, 114: “ an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant [so long as the magistrate is] informed of some of the underlying circumstances [from which the conclusion is drawn] ”.)
The defendants also allege defects which go to the question of probable cause. We have already determined that the finding of probable cause by the issuing Judge or Justice was proper.
E. The telephones tapped under CO-5 and GO-7 were identified by means of a pen register tised under CO-4. The defendants contend that CO-4 merely authorized the interception of communications and not the use of a pen register. They also argue that dial impulses, which enable a pen register to identify the number being dialed, were not communications interceptable under CO-4. In United States v. Dote (371 F. 2d 176) it was held that relayed or translated signals enlitted by dial impulses are wire communications. (Accord, People v. Green, 63 Misc 2d 435.) Therefore, we find that the use of a pen register to translate dial impulses into the number of the telephone dialed was authorized under CO-4 which permits the interception of communications.
F. The defendants seek to discover transcripts of all conversations recorded under the various wiretaps. Such application should be made to the issuing Judge or Justice. (CPL 700.50, subd. 3.) (People v. DeLucia, County Ct., Nassau County, Sept. 11, 1972, Tomson, J.; People v. Stellato, County Ct., Nassau County, Dec. 13, 1972, Lockman, J.; People v. Nizzo, County Ct., Nassau County, Nov. 20, 1972, Kelly, J.; People v. Carozzo, County Ct., Nassau County, Nov. 30, 1972, Kelly, J.; People v. Gabriel, County Ct., Nassau County, Feb. 21, 1973, Spitzer, J.)