## OTIS SWAIN *vs.* THOMAS L. MIZNER.

Where a building is leased in distinct portions to several tenants, who have exclusive oc-cupation and control of their respective tenements, and use in common the entry and stairway, an officer who has entered through the outer door of the house into the entry has no right to break open the door of one of the rooms of a tenant who occupies all the rooms on both sides of the entry on the third floor of the house, in order to attach the property of a third person therein.

ACTION OF TORT for breaking and entering the plaintiff's dwelling-house. At the trial in the superior court of Suffolk there was evidence of these facts:

The plaintiff hired and occupied several rooms on each side of the hall or entry on the third floor of a building in Clifford Place in Boston, being all the rooms on that floor. The residue of the building was also leased by the owner in distinct portions to different families. The plaintiff and other tenants each had exclusive occupation and control of the part of the house occupied by him, except of the stairway and entry, which were for the common use of all the tenants of the house.

The defendant was a constable of Boston, and with a writ in his hands as such against one Ramsdell, for the purpose of attaching his goods, went through the entry and up to the door of the plaintiff's room in which the goods were, and, there finding the door fastened, informed the plaintiff that he was an officer, and showing his process, demanded of the plaintiff to open the door, which he refused to do. The defendant then violently, and against the plaintiff's wish, broke open the door and attached the goods.

*Nelson*, C. J. instructed the jury " that if the plaintiff had proved to their reasonable satisfaction that he had the rightful and exclusive control and possession of a portion of the house, and had also forbidden and endeavored to prevent the entrance of the defendant, then the defendant would have no right violently to break and enter against the plaintiff's will, although he was an officer and had legal process which he was endeavoring to serve, and although he had, without the knowledge of the

plaintiff, and without breaking, got an entrance into the outer door of this common house and building."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. F. Clarke,* for the defendant, cited *Lee* v. *Gansel,* Cowp. 1 ; *Ilsley* v. *Nichols,* 12 Pick. 270.

*W. W. Winthrop,* for the plaintiff, cited *Oystead* v. *Shed,* 13 Mass. 520 ; *Ilsley* v. *Nichols,* 12 Pick. 270 ; Crocker on Sheriffs, § 318 ; Sewell on Sheriffs, 110 ; Gwynne on Sheriffs, 103 ; *Stedman* v. *Crane,* 11 Met. 295 ; *The King* v. *Trapshaw,* 1 Leach, (4th ed.) 427 ; *The King* v. *Rogers,* 1 Leach, 89 ; *The King* v. *Carrell,* 1 Leach, 237 ; 1 Hale P. C. 557 ; 1 Russell on Crimes, (7th Amer. ed.) 817 *& seq.;* 4 Bl. Com. 225 ; 3 Inst. 65 ; *Tracy* v. *Talbot,* 6 Mod. 214, and 3 Salk. 260 ; *Lee* v. *Gansel,* Cowp. 1 ; Colby's Pract. 127.

The decision was made at March term 1858.

MERRICK, J. That an officer cannot break the outer door of a dwelling-house to make an attachment of the owner's goods, or to arrest the person of the debtor, or to execute civil process generally, is a doctrine as well established as any in the books ; and has been distinctly recognized as the law of this commonwealth. *Semayne* v. *Gresham,* Yelv. (Amer. ed.) 29 *& note* (1). *Oystead* v. *Shed,* 13 Mass. 520. *Ilsley* v. *Nichols,* 12 Pick. 270. This is not controverted by the defendant; nor does he place his defence upon anything in opposition to this principle ; but solely upon a denial of the fact that the door, which was broken by him in order to make the attachment which constitutes the grievance complained of, was the outer door of the plaintiff's dwelling-house.

But upon the facts disclosed in the bill of exceptions, we think that the portion of the building occupied by the plaintiff, distinct from the hall, entry and stairway leading to it, did constitute what must be considered in law his dwelling-house. The whole structure appears never to have been designed as a tenement for a single family, but was so constructed as to afford separate and distinct habitations for several persons. Thus the plaintiff occupied all the rooms on one floor of the building, and the hall or

entry through which he passed to reach either of the doors open-
ing into any of the apartments occupied by him was used as a
common passage way for all the tenants of the several portions
of it. It would seem to make no difference whatever may be
the character or peculiarity of the common passage by which
access to a dwelling-house is attained; whether it is a public or
a private way; or whether it leads from one street to another,
or only into a place or court to which there is but a single
entrance; or whether it is an open street, or a way inclosed by
buildings and covered with a roof. In the present instance,
the hall, entry and stairway served as a common and public
passage way for many occupants of entirely distinct habita-
tions. All the right, to which the plaintiff or any other of the
tenants of the different parts of the building in this common
passage way was entitled, was the right of using it for that pur-
pose in the enjoyment of the tenements which they severally
possessed.

The apartments occupied by the plaintiff constituted, in and
of themselves, a complete habitation for himself and his family.
He had the sole and exclusive use and possession of them, as
completely as if they stood separate and apart from everything
else, and were in any other distinct structure. The privilege
which the law allows to a man's habitation clearly ought to
attach to apartments so situated. It arises from the great regard
which the law has for every man's safety and quiet; and therefore
it protects him from those inconveniences which must necessarily
attend an unlimited power in the sheriff and his officers in this
respect. Bac. Ab. Sheriff, N. 3. And this reason shows that
the principle of law which gives protection to dwelling-houses
has no reference whatever to their quality, construction or mag-
nitude, but is solely for the purpose of ensuring the quiet con-
venience and security of those who inhabit and dwell in them.
Domestic security and peace would be equally disturbed by
violence in breaking the doors and forcing an entrance into a
dwelling-house, whether it should consist of the entire portions
of a building, or of separate and distinct apartments within it.

Nor can the fact that there were several doors leading from

the common passage way into the different apartments occupied by the plaintiff lead to a different conclusion. For although it was said by Lord Mansfield in *Lee* v. *Gansel,* Cowp. 1, that the having of four outer doors would lead to the grossest absurdity, since the greatest house in London has but one, that is not the manner in which, according to our prevailing habits and modes of living, our dwelling-houses are here constructed Many might undoubtedly be found here having four, and it would perhaps be difficult to find a house of any moderate degree of pretension which has less than two outer doors. While all the doors opening into any of the apartments occupied by the plaintiff are closed, each of them may be considered, and must be treated, as an outer door. They are all necessary to protect the habitation from the intrusion of those who have no license to enter it. Whether an officer, who had lawfully passed through one of them, might afterwards, for the purpose of completing the service of his process, treat the others as inner doors, need not now be considered, because no such question arises upon the facts reported. The complaint against the defendant is confined to the breaking open of one of the doors, before he had obtained an entrance into any part of that portion of the building which was in exclusive occupation of the plaintiff.

The defendant contends that the door constructed and used for closing the entrance from the street or public highway into the common hall or entry of the building is to be considered the only outer door of the plaintiff's dwelling-house; that is to say that his house consisted of the apartments occupied by him and of the hall and entry used by him as a passage way in common with the tenants of all the other parts of the building. But this latter fact is by no means shown. On the contrary, these appear to have constituted no part of his tenement. He had an easement in them only, in common with others, who all equally enjoyed the like privilege for the purpose of gaining access to their respective tenements.

Reliance is placed with much confidence by the defendant on the case of *Lee* v. *Gansel,* above cited, as a decisive authority against the position of the plaintiff, that the apartments in the

16 *

building in which the alleged trespass was committed, consti-
tuted his dwelling-house. But the facts in the two cases are
quite dissimilar, and therefore the same conclusion is not neces-
sarily to be deduced from each of them. From the statement
of facts in the former case it appears that Gen. Gansel was a
mere lodger in hired apartments in the house of Mayo, who was
at the same time dwelling in it; that the apartments thus hired
were in no way connected together, but were upon different
floors; and that he had only a right in the kitchen, which clearly
imports that he had no exclusive possession of the premises of
which, to a certain extent, he had the use and enjoyment. But
this plaintiff was a housekeeper and not a lodger only. He was
tenant of the apartments which he occupied; they were all on
the same floor, and substantially connected together as a single
tenement; he had the sole and exclusive possession of them;
and in conducting and maintaining his domestic establishment
he had no connection with or dependence upon the owner or
the occupant of any other part of the building in which he
resided. His tenancy resembles that of the occupants of cham-
bers in the inns or court, and in colleges, opening upon a
common staircase, which are conceded to be the dwelling-houses
of those who live in them. But further than this, it is distinctly
stated by Lord Mansfield, that if that which was one house
originally comes to be divided into separate tenements, and
there is a distinct outer door to each tenement, they will be sep-
arate houses.

But without enlarging upon these considerations or seeking
for any peculiar principles upon which the plaintiff's action
may be maintained, we think it is clear that upon the pre-
cise facts stated in the bill of exceptions the apartments in
the building, embracing all the rooms on one of its floors,
which were hired by the plaintiff and occupied by him with his
family as a separate and distinct tenement, constituted, while
he was in such possession and use of them, his dwelling-house;
and that it was therefore entitled to the privilege and protection
which the law affords to the habitations of men.

*Exceptions overruled*