THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALFRED CAPONE, Appellant.

Court of Special Sessions of the City of New York, Appellate Part, Second Department, August 28, 1962.

*Michael S. Washor* for appellant. *Edward S. Silver, District Attorney* (*Harry Brobar* of counsel), for respondent.

JAMES R. CREEL, J. The defendant moves for leave to reargue the appeal herein. Heretofore the defendant had been tried and convicted in Magistrates' Court for book-making in violation of section 986 of the Penal Law, and on appeal that conviction had been affirmed by this court without opinion, Chief Justice MURTAGH dissenting and voting to reverse and remand for a new trial.

In support of this motion the defendant cites the recent case of *People* v. *Moore* (11 N Y 2d 271). In reply the District Attorney has urged that in this case, tried subsequent to *Mapp* v. *Ohio* (367 U. S. 643), the issues of illegality and unreasonableness of the search and seizure were not appropriately raised at the trial (citing *People* v. *Friola,* 11 N Y 2d 157). However, the record clearly reveals that the exhibits, upon which in part at least this defendant's conviction was based, were admitted over defense counsel's objections and an exception granted, and though neither the objection nor the exception squarely and pre-

cisely focused on the illegality of the search, this court in its appellate duties is not believed to be restricted by those self-imposed limitations in hearing appeals which underlie the *Friola* case.

In any event the issue here raised as to the propriety of this book-making arrest is such a recurring one on which there appears to be such diversity of opinion and uncertainty in the law, as to warrant some comment.

It should be noted that book-making, which long has been a misdemeanor under the laws of this State, has by recent legislative enactment been raised, in certain circumstances, to the status of a felony (Penal Law, § 986-c). This action of the New York State Legislature in raising, in certain factual situations, not only book-making but also policy to the status of a felony, has so altered the statutory basis for the arrests in the cases cited in the opinion relied upon by the appellant as to require re-examination as to their current applicability to the facts of the arrest here presented.

The record is clear that the arresting officer without a warrant of search or arrest entered a multiple dwelling, an apartment house, and stationed himself in the public hallway outside of the defendant's second floor front apartment. From this vantage point in a hallway (shared by all the tenants, all their guests, the owner and his maintenance staff, various municipal department inspectors and others), the arresting officer could not see anything but could hear what was taking place in the defendant's apartment. He heard a telephone ring, he heard it answered, he heard the receiving part of the telephone conversation. That conversation related to the taking of a number of bets on race horses running that day on various tracks and those bets were in goodly sums of amounts. His auditory investigation of only eight minutes' duration was interrupted by the defendant's opening the apartment door, and the officer identifying the defendant's voice as the speaker on the telephone. The record is not clear as to just when the officer identified himself as a police officer, as to when he told the defendant he was under arrest, nor is it clear whether the search preceded the arrest or followed it as an incident thereto. Those principles mandated by *Mapp* v. *Ohio* (*supra*) cannot be properly applied until this uncertainty in the record is made clear as to this point.

This point is sharply raised on this motion for reargument and it becomes necessary not only to grant the motion but to remand this case for a new trial to clarify this uncertainty in the record.

Since the United States Supreme Court has asserted supervisory jurisdiction on constitutional grounds by the majority holding in *Mapp* v. *Ohio* (*supra*) over not only State courts, but also municipal police forces and practices, without providing any guideposts or specifications as to application of the general principles therein pronounced, it probably becomes necessary for metropolitan courts of States and cities to evolve by trial and error, reversal and affirmance, a body of case law on constitutional search *conditions,* in which the Federal cases, particularly those of Federal districts and circuits predominantly agricultural, rural or suburban may be of questionable value as precedents. The trial court on the retrial of this case, is entitled to receive such guidance as this court in its limited capacity can give upon the issue which will be raised there, particularly as to the legality of this arrest.

The legality of this arrest would appear to depend upon two considerations. First, was the action of the officer, without any warrant, in stationing himself in the common public hallway of this multiple dwelling or apartment house outside of the door of the defendant's second floor apartment, such an eavesdropping trespass or intrusion as to be unreasonable and illegal? Second, did the officer have reasonable grounds for believing that a felony was committed in his hearing, and that the defendant was connected therewith, although the crime is now alleged by information as a misdemeanor?

While we as Judges can weigh and ponder these questions over considerable periods of time in the relative quiet of courts, chambers or libraries, it should be observed that the arresting officer must not only decide such questions, but implement them by appropriate action, and secure submission in the matter of split seconds and under conditions of extreme excitement and possible violence and danger. It is the duty of courts, therefore, to resolve promptly, wherever possible, such uncertainties as presently exist as to propriety of arrests, searches and seizures in circumstances such as are presented in this case.

When the arresting officer entered this multiple dwelling apartment house without any warrant and stationed himself in the second floor common or public hallway, had he so trespassed by an unauthorized physical encroachment as to violate constitutional rights? Or to state the issue more sharply, are communal or public hallways of a multiple dwelling apartment house constitutionally protected areas into which a police officer's entry without a warrant would be such an unauthorized physical encroachment or trespass as to render evidence thereby heard

inadmissible? These communal or public hallways are not under the domain or control of any occupant, or occupants collectively, since all responsibilities for lighting, repairing, cleaning, maintaining, etc., of such areas are placed by the Multiple Dwelling Law upon the owner or landlord. Hence, these areas are not appropriately analogous to the close or curtilage of the common-law's detached dwelling house which were a part of the occupant's domain subject to his control, disposition and ownership. The grim realities of modern living in metropolitan areas require us to note that the situs of much if not most crime is now in these communal public areas of the modern multiple dwelling, particularly hallways, the fire-stair landing under the roof, the roof, and the cellars thereof. With streets well lighted and patrolled, and parks well lighted, patrolled and closed at night, the criminal of today all too frequently plies his nefarious trade in and infests those communal or public areas of the metropolitan multiple dwelling house and neither the tenant occupant nor the owner landlord have been effective in repelling this intrusion. If the intended benefit of the Fourth Amendment were extended to such communal or public areas of the multiple dwelling, thereby excluding police protection, unless armed with a warrant to search or arrest a particular area or person, such communal or public areas of the multiple dwelling would become a safe sanctuary for the criminals who already infest such areas — and an intended benefit might become a curse to the citizen occupant of such apartment buildings, stripping him of much needed effective police protection where he most needs it.

Accordingly it is held that the action of the police officer in stationing himself in the public hall outside of the apartment of the defendant was not such a trespass or physical intrusion as to render that which he heard inadmissible. It is recognized that such holding may be novel, no authorities precisely in point either pro or con have been cited, and we welcome instruction from a higher court. It is also recognized that the best possible police practices were not here observed. Since this police officer apparently had some idea where to listen and what to expect to hear, he should have endeavored to secure a proper warrant, but does his omission of such endeavor render his action so unreasonable as to require the exclusion of the evidence he secured on this arrest? It is most seriously doubted that the decision of the Supreme Court in *Mapp* v. *Ohio* (*supra*) and the general supervisory principle of law therein announced without further guideposts for their application require metropolitan Judges to so hold when dealing with such an ephemeral transitory will-of-the-wisp as a New York book-making or policy

wire-drop and the studiedly elusive and evasive and changing operators thereof. It is doubted that *Johnson* v. *United States* (333 U. S. 10), admittedly the " high water " (*Henry* v. *United States,* 361 U. S. 98, 101) of restriction upon reasonable ground for arrest, is here applicable.

It should be noted that the factual situations, circumstances, and conditions to which these general principles of law are to be applied differ so radically and greatly in metropolitan urban areas from those which prevail in surburban and rural districts (in which much of the Federal case law of search and seizure has been evolved) as to render the application of such case law inappropriate, if not dangerous, in the great metropolitan areas. Though constitutional principles are universal, courts in the application of these principles must take full cognizance of the factual climate in which they are applied; the Constitution casts its protection around " houses " and they are constitutionally protected everywhere; but can houses be properly defined by courts to include the same areas, spaces and appurtenances in metropolitan as in rural communities without doing violence to the reality that living quarters physically differ very radically in these different kinds of communities? Highly organized police forces and specialized police practices and techniques have evolved and developed to combat organized and syndicated crime existing in metropolitan communities, and in such areas such police practices and techniques serve a community need and might well be held to be *reasonable* by courts; though they might well be unnecessary and properly held to be unreasonable and offensive in rural or agricultural areas. In *Henry* v. *United States* (*supra*) the court in holding unreasonable the arrest and the seizure in a strictly *residential area* expressly pointed out that the holding would have been the reverse had the situs been in an *industrial or more metropolitan area.* If the *Mapp* decision is not to disturb the delicate balance of our Federal system and render law enforcement in metropolitan areas unreasonably difficult, courts in the application of this supervisory mandate must be most sensitive to the different conditions which prevail in residential, suburban, rural and agricultural areas from those which prevail in metropolitan industrial areas.

What the officer overheard gave him reasonable grounds for believing that book-making was going on inside the apartment, that book-making bets were being telephoned to that apartment, and though the period of time of listening was short, the total amounts of the bets he heard placed were large and it was probable that numerous other large bets were or had been placed. It is common knowledge in the metropolitan area and a fact

much discussed in the metropolitan press that the amounts of book-making bets placed over telephones assume vast totals — responsible public officials have estimated that if this book-making activity were brought into the open and moderately taxed it would produce an annual revenue in excess of $100,000,000. Did the arresting officer have reasonable grounds to believe that the book-making activities over that telephone within that apartment might reach such proportions as to constitute a violation of section 986-c of the Penal Law a felony? It is difficult to hold that he did not have such reasonable grounds to believe, though subsequent events warranted charging this defendant with but a misdemeanor. When the arresting officer identified the voice of the defendant as the voice he heard taking the book-making bets he had reasonable grounds for believing that the defendant was connected with the commission of that felony. Accordingly, it is held that the arrest was a proper one under section 986-c of the Penal Law.

The validity of the seizure of the " Jersey slips " and the search cannot be determined upon the present state of the record because it is not known whether it preceded or was incident to the arrest. And for that reason it is apparent that the motion must not only be granted, but that a new trial must be ordered.

MURTAGH, P. J., concurs in the granting of the motion and in the ordering of a new trial, but not in the opinion. DUNAIF, J., dissents and votes to deny the motion and to affirm the conviction below. Motion granted.