**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Mose HOLLAND, Defendant-Appellee.**

**Cal. No. 1360, Docket 84–1088.**

United States Court of Appeals, Second Circuit.

Argued June 13, 1984.

Decided Feb. 8, 1985.

Jon O. Newman, Circuit Judge, dissented and filed opinion.

**254**

Paul J. Cambria, Jr., Buffalo, N.Y. (Rochelle A. Reback, Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., on the brief), for defendant-appellee.

Frank J. Clark, III, Asst. U.S. Atty., Buffalo, N.Y. (Salvatore R. Martoche, U.S. Atty., Buffalo, N.Y., on the brief), for plaintiff-appellant.

Before FRIENDLY, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal by the Government from an order of the United States District Court for the Western District of New York (Elfvin, J.) suppressing certain evidence and oral admissions which followed appellee's warrantless arrest. Although the district court found that the arrest was based on probable cause, thus satisfying the requirement of *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), it held the arrest to be illegal under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), because appellee was "inside his home" when the arrest took place. Disagreeing with this conclusion, we reverse.

Appellee is the tenant in the second floor apartment of a two-story house in Buffalo. Entry to the apartment is by means of a common hallway, which also serves the first floor apartment. It is not contended that appellee had any more than the customary easement of way in the common hallway, an easement which gave the occupants of the upstairs and downstairs apartments and their visitors the right to use the hallway. *See Presby v. Benjamin*, 169 N.Y. 377, 379, 62 N.E. 430 (1902); *Federal Waste Paper Corp. v. Garment Center Capitol, Inc.*, 268 A.D. 230, 233–34, 51 N.Y.S.2d 26 (1st Dep't 1944), *aff'd*, 294 N.Y. 714, 61 N.E.2d 451 (1945); *Swain v. Mizner*, 74 Mass. 182 (1857).

On February 4, 1983, Deputy Sheriff James Robinson, who was participating with other officers in a drug bust, rang the bell for appellee's apartment at the ground floor entranceway to the common hallway. Appellee and Robinson were friends, or at least acquaintances, and appellee knew that Robinson was a police officer. When Robinson rang the bell, appellee left his second floor apartment, walked down a flight of stairs to the first floor, then down another flight of stairs to a hallway or vestibule leading to the outer door. Recognizing Robinson, he opened the door to him. The district court found that appellee was not induced to open the door as the result of police deception or coercion.

When the door was opened, Robinson drew his gun, displayed his badge and said, "Doc, this is business." From that time on, appellee's liberty of movement was restricted, and he could not reasonably have believed that he was free to leave. He was under arrest. *See United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); *United States v. Thompson*, 356 F.2d 216, 222 (2d Cir.1965), *cert. denied*, 384 U.S.

964, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966). The Government contends that the arrest was lawful, because appellee then "was as exposed to public view, speech, hearing, and touch as if [he] had been standing completely outside [his] house." *United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976); *see United States v. Whitten,* 706 F.2d 1000, 1015 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *United States v. Mason,* 661 F.2d 45, 47 (5th Cir.1981). We see no need, however, to treat this as a "threshold" case. Assuming that appellee's arrest took place in the vestibule or hallway, it nevertheless did not take place in appellee's "home".

Although the Supreme Court has accorded apartments and hotel rooms status as "homes" for Fourth Amendment purposes, it has never given the same status to adjoining common hallways. For example, in *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), where police officers forced their way into the defendant's basement apartment, the Court said that they "broke the door to invade his home." *Id.* at 314, 78 S.Ct. at 1198. In *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), where Johnson was arrested in her hotel room, the Court described the "[e]ntry to defendant's living quarters" as the beginning of the search. *Id.* at 13, 68 S.Ct. at 368. In *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), Justice Brennan, one of the staunchest advocates of Fourth Amendment restraints, condemned only the "unannounced intrusion of the arresting officers into [petitioners'] apartment." *Id.* at 46, 83 S.Ct. at 1636 (Brennan, J., concurring in part and dissenting in part). In *United States v. Reed,* 572 F.2d 412 (2d Cir.1978), where we announced this Court's disapproval of warrantless, non-exigent arrests inside a defendant's home—in that case, an apartment—we took special note of the fact that the arrest did not occur in the hallway. *Id.* at 423.

Congress, too, has recognized this common-sense distinction between places of abode, such as apartments, and common hallways. The short-lived National Prohibition Act, Pub.L. No. 66, 41 Stat. 305, 315 (1919), as supplemented by Pub.L. No. 96, 42 Stat. 222, 223 (1921), prohibited the warrantless search of a "private dwelling" and construed that term to include "the room or rooms used and occupied not transiently but solely as a residence in an apartment house, hotel, or boarding house."

In *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), Justice Stewart, writing for the majority, stated that "the Fourth Amendment cannot be translated into a general constitutional 'right to privacy.'" *Id.* at 350, 88 S.Ct. at 510. Justice Harlan, concurring, said that the extent of Fourth Amendment protection generally is determined by reference to a place. *Id.* at 361, 88 S.Ct. at 516. Consistent with this reasoning, the Court thereafter held that a suspect has no generalized right of privacy against a warrantless felony arrest based on probable cause, *United States v. Watson, supra,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, but recognized the existence of a limited right of privacy against an arrest in the suspect's home, *Payton v. New York, supra,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639.

The expectation of privacy against warrantless felony arrests thus has reference to a place, *United States v. Agapito,* 620 F.2d 324, 331 (2d Cir.), *cert. denied,* 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980), and will be violated only if the place is one that the defendant has the right to keep private and subject to his exclusive control. *See Rakas v. Illinois,* 439 U.S. 128, 149, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978); *United States v. Eisler,* 567 F.2d 814, 816 (8th Cir.1978); *United States v. Williams,* 565 F.Supp. 353, 361–62 & n. 15 (N.D.Ill.1983). Accordingly, it is the established law of this Circuit that the common halls and lobbies of multi-tenant buildings are not within an individual tenant's zone of privacy even though they are guarded by locked doors. *See, e.g., United States v. Martinez-Gonzalez,* 686 F.2d 93, 101–02 (2d Cir.1982); *United States v. Arboleda,* 633 F.2d 985, 991–92 (2d Cir.1980), *cert.*

*denied*, 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981); *United States v. Penco*, 612 F.2d 19, 24–25 (2d Cir.1979); *United States v. Corcione*, 592 F.2d 111, 118 (2d Cir.), *cert. denied*, 440 U.S. 975, 99 S.Ct. 1545, 59 L.Ed.2d 794 (1979); *United States v. Wilkes*, 451 F.2d 938, 941 n. 6 (2d Cir.1971); *United States v. Llanes*, 398 F.2d 880, 883–84 (2d Cir.1968), *cert. denied*, 393 U.S. 1032, 89 S.Ct. 647, 21 L.Ed.2d 576 (1969); *United States v. Conti*, 361 F.2d 153, 157 (2d Cir.1966), *vacated on other grounds*, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968); *United States v. Miguel*, 340 F.2d 812, 814 (2d Cir.), *cert. denied*, 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965); *United States v. Moore*, 463 F.Supp. 1266, 1270 (S.D.N.Y.1979); *United States v. St. Clair*, 240 F.Supp. 338 (S.D.N.Y.1965).

Moreover, we never have held that the common areas must be accessible to the public at large nor have we required a quantified amount of daily traffic through the area as a basis for determining that a common area is beyond an individual's protected zone of privacy. *See United States v. Corcione, supra* (hallway outside second-story apartment in two story, two-apartment house); *United States v. Arboleda, supra* (fire escape); *United States v. Wilkes, supra* (hallway outside ground floor apartment in New York City brownstone); *United States v. Llanes, supra* (hallway outside rear ground floor apartment). *See also Polk v. United States*, 314 F.2d 837 (9th Cir.1963) (per curiam) (outside stairway serving first and second floor flats), *cert. denied*, 375 U.S. 844, 84 S.Ct. 96, 11 L.Ed.2d 72 (1963).

This rule gives tenants the benefit of much-needed police protection in common hallways, *People v. Capone*, 35 Misc.2d 1071, 1074, 232 N.Y.S.2d 3 (1962), while it preserves for them the privacy of their actual places of abode, their apartments. It also lays down a clearly-defined boundary line for constitutionally permissible police action, which is readily apparent to an officer in the field, without a need for counting apartments, analyzing common-hallway traffic patterns or interpreting the mental processes of a suspect relating to an area used in common with others. In addition to protecting the public against the untoward effect of a "constable's blunder", it protects the "constable" against potential civil liability under 42 U.S.C. § 1983 resulting from an erroneous determination as to whether the door to a tenant's "home" is his apartment door or a door at the other end of a common hallway. *See Segura v. United States*, —— U.S. ——, ——, 104 S.Ct. 3380, 3389, 82 L.Ed.2d 599 (1984). We see no reason why the rule should not be applied in the instant case.

In passing along the common ways in his building on any given day, including the day of his arrest, appellee reasonably might expect to meet the landlord or his agents, the occupants of the first floor apartment, deliverymen, tradesmen, or one or more visitors to the first floor apartment. *See United States v. Eisler, supra*, 567 F.2d at 816; *United States v. Anderson*, 533 F.2d 1210, 1214 (D.C.Cir.1976). He had no right to exclude them from the common hallway, and there is no indication that he ever tried to do so. In *United States v. Penco, supra*, 612 F.2d at 25, where, as here, the defendant's argument was based upon *Katz v. United States, supra*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, we said:

> The argument that the privacy expectations analysis of *Katz v. United States*, 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576] (1967), somehow undercut the reasoning of [*United States v. Miguel, supra*] and [*United States v. Conti, supra*] was expressly considered and rejected by our Court in *United States v. Llanes*, 398 F.2d 880 (2 Cir.1968), *cert. denied*, 393 U.S. 1032 [89 S.Ct. 647, 21 L.Ed.2d 576] (1969).

Prior to *Payton v. New York, supra*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, the Supreme Court never had clearly established whether a warrant was needed for the non-exigent felony arrest of a person inside his home. *Id.* at 574, 100 S.Ct. at 1373. With three justices vigorously dis-

senting, the Court answered the "narrow question", *id.* at 582, 100 S.Ct. at 1377, in the affirmative. Justice Stevens, writing for the majority, said:

> We ... hold that the Fourth Amendment ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.

*Id.* at 576, 100 S.Ct. at 1374–75.

We believe that, when the *Payton* majority said they were answering a "narrow question", they meant exactly that. Reading *Payton* in the light of the "question's" controversial history, we find no intent to broaden the definition of "home" so as to include, as here, the entranceway to a common hallway.

The order of the district court is reversed.

JON O. NEWMAN, Circuit Judge, dissenting:

Mose Holland was in his second-floor apartment in a two-family house when he heard someone ring the bell to his apartment. He walked down two flights of stairs, looked out the window in the outside door, recognized his friend, Deputy Sheriff Robinson, and opened the door. Robinson then displayed a gun and a badge, said "Doc, this is business," and arrested Holland without a warrant just inside the door.[1] If Holland had been living in a modern building equipped with a buzzer mechanism for unlocking the outside door and a means of communication between apartment and entrance, he would have ascertained his visitor's identity by recognition of his voice instead of his face, buzzed to admit the officer through the outside door, and waited in his apartment until the officer climbed the two flights of stairs and knocked on his apartment door. If Holland had then opened that door and seen Robinson with gun and badge, his arrest just inside his apartment door would have violated the Fourth Amendment. *Payton v.*

*New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *United States v. Reed,* 572 F.2d 412 (2d Cir.), *cert. denied,* 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978). The majority concludes that on the facts of this case no Fourth Amendment violation occurred because Holland, in the course of admitting his visitor to his home in the only way available to him, was arrested in a "common hallway"—the vestibule just inside the outside door. I respectfully dissent because I do not believe the Fourth Amendment protection available to those admitting visitors to their apartment homes in a modern building is lost in the humble surroundings in which Mose Holland lives.

My difference with the majority stems from a fundamental disagreement as to the proper approach in determining the scope of Fourth Amendment protection. Employing essentially property concepts, the majority notes that Holland had no more than "the customary easement of way" in the vestibule. His lack of exclusive rights in any part of the premises other than the confines of his apartment results in his loss of Fourth Amendment protection against a warrantless arrest in his "home." In my view, reliance on property concepts, which formerly served to explain why a listening device placed *against* a wall was lawful, *Goldman v. United States,* 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942), while a "spike mike" *penetrating* a wall was not, *Silverman v. United States,* 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961), has been displaced by *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), in favor of an inquiry into reasonable expectations of privacy as the determinant of Fourth Amendment protection. *See United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976).

In *Katz v. United States, supra,* the Supreme Court rejected the Government's warrantless overhearing of a suspect's end

---

**1.** The Government makes no claim that exigent circumstances justified a warrantless entry or that Holland consented to that entry.

of telephone calls placed from a public telephone booth. The Court explained that its conclusion did not rest on a finding that the place where the seizure occurred was a "constitutionally protected area." *Id.* 389 U.S. at 351, 88 S.Ct. at 511. Rather the Court determined that under the circumstances there had been an intrusion on the defendant's justifiable privacy interests. *Id.* at 353, 88 S.Ct. at 512. In the majority's well-known phrase, "[T]he Fourth Amendment protects people, not places." *Id.* at 351, 88 S.Ct. at 511. But, as Justice Harlan's concurring opinion helpfully explains, the determination of what privacy interests of people society is prepared to regard as reasonable often requires "reference to a 'place.'" *Id.* at 361, 88 S.Ct. at 516. A person's expectation of privacy in his home will normally be considered reasonable, and his expectation of privacy in activities conducted "in the open" will usually be deemed unreasonable, though the inquiry cannot consider "place" apart from its use. For Justice Harlan, it was not decisive that the telephone booth was "'accessible to the public' at other times." *Id.* By shutting the door to the booth and paying the toll to place his call, the defendant had entered a "temporarily private place" in which he was reasonably entitled to expect freedom from governmental intrusion. *Id.*[2] The lesson of *Katz* is that, before a place can be labeled "private" or "public" for purposes of determining the reasonableness of a person's expectation of privacy, it is necessary to consider both the nature of the place and the manner in which the person is using it.

The subsequent decisions in *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), and *Payton v. New York, supra,* are entirely consistent with this approach. A warrantless arrest was upheld in *Watson* because it occurred in a public restaurant and no circumstances indicated any private use of the premises

by the defendant. By contrast, a warrantless arrest was ruled unlawful in *Payton* because it occurred in a home and no circumstances indicated any public use of the premises. *See also Oliver v. United States,* —— U.S. ——, 104 S.Ct. 1735, 1741–42, 80 L.Ed.2d 214 (1984); *United States v. Santana, supra,* 427 U.S. at 42, 96 S.Ct. at 2409. Holland was arrested in a common hallway of a two-family house. That hallway is not as public as the restaurant in *Watson,* nor as private as the interior of the home in *Payton.* To determine whether Holland had a reasonable expectation of privacy in that hallway at the time of his arrest, we should consider the nature of the "place" and the circumstances under which he was then using it.

Access to the hallway was extremely limited. For all that appears, the only persons who could gain access were those admitted with the consent of either Holland or the tenant of the first-floor apartment. Moreover, the hallway was an enclosed area, not exposed to public view, except for the brief moment when the door was opened to admit a visitor. Visitors, and even Holland himself, could not enter Holland's apartment without passing through the hallway. The hallway was closely, indeed "intimately," associated with Holland's home, *see Oliver v. United States, supra,* 104 S.Ct. at 1742, far more so than would be true of lobbies and hallways of apartment buildings with numerous apartments.

Most significantly, when Holland opened the outside door, he was using it as the door to his home. When he heard the doorbell ring, he came down the stairs and looked out the window to identify his visitor, a "normal precaution[ ] to maintain his privacy," *Rawlings v. Kentucky,* 448 U.S. 98, 105, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). In fact, the only way Holland could admit Robinson to his home was to go downstairs, open the outside door, and escort his visitor through the hallway and

---

**2.** The reasoning of Justice Harlan's concurrence has been widely followed. *See, e.g., Oliver v. United States,* —— U.S. ——, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984); *Illinois v. Andreas,* 463 U.S. 765, 103 S.Ct. 3319, 3323, 77 L.Ed.2d 1003 (1983); *United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976); *United States v. Reed,* 572 F.2d 412, 422 (2d Cir.), *cert. denied,* 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978).

up the stairs to his apartment. Holland is not asserting a privacy interest in the hallway apart from the use he was then making, for example, if he had left something in the hallway. The facts establish a location that was sufficiently related to a home and that was being used in a sufficiently direct connection with access to a home to demonstrate a reasonable expectation of privacy. *Cf. United States v. Fluker*, 543 F.2d 709, 716–17 (9th Cir.1976) (tenant in basement apartment in three-apartment dwelling had reasonable expectation of privacy in area separating his apartment from outer door of building for purposes of applicability of 18 U.S.C. § 3109 (restricting forcible entry)).

The majority invokes several decisions of our Circuit for the proposition that common hallways of multi-tenant buildings are not within an individual tenant's zone of privacy. 755 F.2d at 255–56. In none of those cases, however, did the law enforcement agent gain access to the hallway by virtue of the defendant's response to the agent's display of authority. The agent got in because the building door was unlocked, *United States v. Wilkes*, 451 F.2d 938, 940 (2d Cir.1971), or because a building employee let him in, *United States v. Penco*, 612 F.2d 19, 21 (2d Cir.1979), or because another tenant let him in, *United States v. Corcione*, 592 F.2d 111, 114 (2d Cir.), *cert. denied*, 440 U.S. 975, 99 S.Ct. 1545, 59 L.Ed.2d 794 (1979), or because another tenant was coming out, *United States v. Miguel*, 340 F.2d 812, 814 (2d Cir.), *cert. denied*, 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965). I have no doubt that a tenant in a multi-apartment building must accept the risk that someone else will admit a police officer into the common areas of the building and, if the defendant is present in those areas, he may be arrested there upon probable cause. But following *Katz* (temporally and substantively), I believe a tenant has a legitimate expectation of privacy in a hallway when he is using it to admit someone to his home; at least, this should be so in a small two-family house like Holland's.

I appreciate the majority's preference for a "clearly-defined boundary line" that will be readily apparent to an officer in the field. However, that line already exists for cases such as this: the line between arrests with a warrant and those without a warrant. Sheriff Robinson, or any other law enforcement officer sent to arrest a suspect in his home under non-exigent circumstances, can always satisfy the requirements of *Payton* by presenting evidence of probable cause to a neutral magistrate and obtaining a warrant. Armed with a warrant, Robinson could lawfully have arrested Holland in the hallway, and even a defect in the warrant would not have barred the use of evidence thereby obtained. *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We need not ignore the reality of the private use Holland was making of the vestibule when he answered Robinson's ring in order to give police officers a discernible line. The Fourth Amendment, by normally requiring warrants, has already done that.

It is especially distressing to see an officer's potential civil liability under 42 U.S.C. § 1983 (1982) relied upon as a reason for fashioning a needlessly restrictive rule that denies a tenant any protection against a warrantless arrest beyond the physical confines of his apartment. That constitutional tort action already has its own objective good-faith immunity defense to protect the officer who ought not to be held in damages even though he may have transgressed a constitutional standard. *See O'Hagan v. Soto*, 725 F.2d 878, 879 (2d Cir.1984). Difficulty in applying constitutional limits to the facts of a specific case may justify limiting an officer's exposure to damage liability by a defense of qualified immunity, but such difficulty ought never to be any part of the determination of the substantive content of the pertinent constitutional standard.

In the majority's view, when Mose Holland came downstairs and stood in the vestibule to answer Sheriff Robinson's ring, he was using a right of easement. In my view, he was admitting a visitor to his home. Because I find no case permitting a warrantless arrest in such circumstances

and believe that a warrant was required under the principles of *Katz* and *Payton*, I dissent.