15-577
*United States v. Simmonds*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 11th day of March, two thousand sixteen.

Present:    ROBERT A. KATZMANN,
                    *Chief Judge*,
            ROBERT D. SACK,
            RAYMOND J. LOHIER, JR.,
                    *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

                    *Appellee*,

                    v.                                                         No. 15-577

VON SIMMONDS,

                    *Defendant-Appellant.*

_____

For Appellee:                     WENDY FULLER (Kevin J. Doyle and Gregory L. Waples, *on the brief*), Assistant United States Attorneys, *for* Eric S. Miller, United States Attorney for the District of Vermont, Burlington, VT.

For Defendant-Appellant:          STEVEN L. BARTH, Assistant Federal Public Defender (Barclay T. Johnson, Research & Writing Attorney, *on the brief*), *for* Michael L. Desautels, Federal Public Defender for the District of Vermont, Burlington, VT.

Appeal from the United States District Court for the District of Vermont (Reiss, *C.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Von Simmonds appeals from a judgment of conviction in the United States District Court for the District of Vermont (Reiss, *C.J.*). In the early morning of March 8, 2013, law enforcement visited the apartment of Kenneth Clark with the intent to perform a "knock and talk" because they had received information that he was distributing heroin out of the apartment. The visit resulted in a search of Clark's apartment, where the officers encountered defendant Simmonds. During questioning by one of the officers, Simmonds made a number of incriminating statements. He was subsequently arrested and indicted on one count of knowingly conspiring to distribute cocaine base under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.

On June 10, 2013, Simmonds filed a motion to suppress his statements on the basis that they were obtained in violation of the Fifth Amendment. The district court held an evidentiary hearing and subsequently denied the motion on November 25, 2013. He filed a second motion to suppress evidence on December 25, 2013, arguing that the search of Clark's apartment was nonconsensual in violation of the Fourth Amendment. Following an evidentiary hearing and supplemental briefing, the district court denied the motion on April 29, 2014. *See United States v. Simmonds*, No. 5:13-cr-42, 2014 WL 1706296 (D. Vt. Apr. 29, 2014). Simmonds was convicted by a jury in June 2014. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

On appeal from a district court's ruling on a motion to suppress evidence, we review the district court's "legal conclusions de novo and findings of fact for clear error." *United States v. Freeman*, 735 F.3d 92, 95 (2d Cir. 2013). We accord "special deference to the district court's factual determinations going to witness credibility." *United States v. Jiau*, 734 F.3d 147, 151 (2d Cir. 2013).

We turn first to Simmonds's argument that his statements were obtained in violation of the Fifth Amendment. The Supreme Court established in *Miranda v. Arizona*, 384 U.S. 436 (1966), that "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. In practice, *Miranda* requires that "prior to the initiation of [custodial] questioning, [law enforcement officers] must fully apprise the suspect of the [government's] intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to 'have counsel present . . . if [he] so desires.'" *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (fourth alteration in original) (quoting *Miranda*, 384 U.S. at 468–70); *see also Illinois v. Perkins*, 496 U.S. 292, 296 (1990). Here, the officer who interviewed Simmonds, FBI Special Agent Christopher Destito, gave Simmonds a *Miranda* warning after he had been questioning Simmonds for approximately five minutes. By that time, Simmonds had already made incriminating statements. After waiving his *Miranda* rights, Simmonds continued to answer questions candidly and provided greater detail about his involvement in drug dealing.

Simmonds argues that his statements should be suppressed, notwithstanding that he waived his *Miranda* rights, because Agent Destito engaged in an improper "two-step interrogation." *See Missouri v. Seibert*, 542 U.S. 600, 604 (2004) (plurality); *id.* at 622 (Kennedy, J., concurring). In *Seibert*, the Supreme Court held that officers may not deliberately withhold *Miranda* warnings in a custodial interview in order to obtain a confession and then cure the violation with a mid-interrogation *Miranda* warning. *See United States v. Capers*, 627 F.3d 470, 475–76 (2d Cir. 2010) (summarizing *Seibert*). However, we need not reach that argument, because Simmonds was not in custody before Agent Destito provided him a *Miranda* warning.

The determination of whether a person is in custody for *Miranda* purposes is an "objective inquiry" made after examining "all of the circumstances surrounding the

3

interrogation." *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2402 (2011) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)). Those circumstances include, *inter alia*:

> the interrogation's duration; its location (e.g., at the suspect's home, in public, in a police station . . .); whether the suspect volunteered for the interview; whether the officers used restraints; whether weapons were present and especially whether they were drawn; whether officers told the suspect he was free to leave or under suspicion . . . [; and] the nature of the questions asked.

*United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011). We begin by asking "whether a reasonable person would have thought he was free to leave the police encounter at issue. If the answer is yes, the *Miranda* inquiry is at an end; the challenged interrogation did not require advice of rights." *United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004). However, if the answer is no, the "court must ask whether, in addition to not feeling free to leave, a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* "Only if the answer to this second question is yes was the person 'in custody' . . . ." *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)).

The parties dispute whether the defendant carries the burden of proof with respect to custody. *Compare United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir. 1980) ("[T]he burden of production and persuasion generally rest upon the movant in a suppression hearing." (quoting *United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977))), *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989) (finding that the defendant "failed to demonstrate that he was subjected to custodial interrogation"), *and United States v. Davis*, 792 F.2d 1299, 1309 (5th Cir. 1986) ("[The defendant] had the burden of proving that he was under arrest or in custody."), *with United States v. Eggers*, 21 F. Supp. 2d 261, 266 (S.D.N.Y. 1998) ("[T]he government bears the burden of establishing by a preponderance of the evidence that the statements were not the product of custodial interrogation conducted in the absence of *Miranda* warnings."), *and United States v. Zaleski*, 559 F. Supp. 2d 178, 188 (D. Conn. 2008) ("[T]he government bears the burden of proving, by a preponderance of the evidence, . . . that *Miranda* does not apply because

4

the statement was not obtained during custodial interrogation."). However, we do not decide the issue here, because we conclude that the totality of the circumstances show that Simmonds was not in custody regardless of which party had the burden of proof.

Simmonds argues that the officers' initial, brief use of firearms supports a conclusion that the interrogation was custodial. After the officers entered the apartment and began their search, Clark informed them that another man was in the apartment. Agent Destito and Rutland Detective David LaChance unholstered their guns and approached the back bedroom where they encountered Simmonds. LaChance ordered Simmonds to put his hands up and he likely frisked Simmonds before they left the room. LaChance then escorted Simmonds out of the room at gunpoint and turned him over to Destito, who patted him down in the hallway.

Although the use of firearms is generally an important factor in our analysis of the totality of the circumstances, the fact that the officers initially used firearms and briefly searched Simmonds does not compel a conclusion that the ensuing interrogation was custodial, especially where the use of firearms was "necessitated by the officers' safety concerns" and ended "as soon as . . . the perceived security threat abated." *United States v. Cota*, 953 F.2d 753, 759 (2d Cir. 1992); *see Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001) (noting that "[s]everal courts have ruled that an initial display of guns, subsequently reholstered, does not result in 'custody' that requires *Miranda* warnings"). Here, the district court found that "[w]ithin seconds" the two law enforcement officers holstered their firearms after determining that Simmonds was not a threat. Destito then asked Simmonds to take a seat in a lounge chair in the living room.

Furthermore, the fact that the interview then took place in the living room supports a conclusion that it was not a custodial setting. *Cf. United States v. Mitchell*, 966 F.2d 92, 99 (2d Cir. 1992) (finding the defendant was not in custody because, among other reasons, "[t]he entire interview occurred in the familiar surroundings of [his] home"); *cf. also United States v. Bassignani*, 575 F.3d 879, 885 (9th Cir. 2009) ("[A]n interrogation conducted in familiar

5

surroundings weighs against a finding that the defendant was in custody."). In contrast to cases finding custody because of a "police-dominated atmosphere," Agent Destito was dressed in plain clothes, his weapon was holstered and concealed by his jacket, he was not positioned between Simmonds and the apartment's exit, no other officers were involved in the interview, and the tone of the interview was conversational in nature. *Cf. United States v. Cavazos*, 668 F.3d 190, 194 (5th Cir. 2012) (finding an interrogation was custodial because, among other reasons, "more than a dozen officers entered and searched the [defendant's] home"); *United States v. Revels*, 510 F.3d 1269, 1275 (10th Cir. 2007) (finding a reasonable person "would have perceived a police-dominated atmosphere" when "seven police officers abruptly roused [the defendant and her boyfriend] from their bedroom after forcibly entering their home").

Simmonds asserts that a finding of custody is supported by the fact that he was the only African American in the apartment. However, there is no indication in the record that a reasonable person in Simmonds's position would have felt as though the officers treated him differently than the other occupants on account of his race. The district court found that, while Simmonds was being interviewed by Destito, the other officers were conducting a search of the apartment and "dealing with the other occupants." Furthermore, the record suggests that the officers had legitimate reasons for pursuing Simmonds in the manner that they did, given that he was in a separate bedroom when they began the search and that they had legitimate safety concerns as they approached the room.

Destito's form of questioning also does not necessarily support a conclusion that the interrogation was custodial. The district court noted that Destito accused Simmonds of lying, confronted him with evidence of his guilt, and advised him that it was in his best interest to be honest. However, "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of the law enforcement system which may ultimately cause the suspect to be charged with a crime."

6

*California v. Beheler*, 463 U.S 1121, 1124 (1983) (per curiam) (alteration in original) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). There is no indication that Destito's questioning was any more coercive than what would be expected in any questioning by a police officer of an individual suspected of a crime.

Neither of the two cases on which Simmonds relies supports a conclusion that the interrogation here was custodial. In *United States v. Newton*, officers knocked on the defendant's door and immediately placed him in handcuffs. 369 F.3d at 663. Given that "[h]andcuffs are generally recognized as a hallmark of a formal arrest," *id.* at 676, and that Simmonds was not placed in handcuffs prior to or during the interview, that case is distinguishable. The second case discussed by Simmonds, *United States v. Ali*, 86 F.3d 275 (2d Cir. 1996), is similarly inapposite. *Ali* involved an interrogation at an airport where the defendant "was asked to step away from the boarding area, his travel documents were removed, and he was surrounded by seven officers with visible handguns." *Id.* at 276–77 (quoting *United States v. Ali*, 68 F.3d 1468, 1473 (2d Cir. 1995)). Two officers testified that they would not have allowed the defendant to leave if he had tried to do so. *Id.* at 277. In contrast, Simmonds was interviewed only by one officer in an apartment and none of the officers had restricted his ability to leave like the officers in *Ali* had done by removing the defendant's travel papers.

In light of the totality of the circumstances, we conclude that the interrogation of Simmonds that took place prior to the *Miranda* warning was not custodial.

We turn next to Simmonds's Fourth Amendment challenge.[1] He argues that the officers violated the Fourth Amendment when, without consent, they entered a street level door in order to access a hallway and stairwell that led to Clark's apartment door. It is well established that the Fourth Amendment applies only to spaces in which an individual has a reasonable expectation of

---

[1] Because Simmonds was an overnight guest in the apartment, he has standing to object to an illegal search under the Fourth Amendment. *United States v. Osorio*, 949 F.2d 38, 41 (2d Cir. 1991) ("[A]n overnight guest has a 'legitimate expectation of privacy in his host's home.'" (quoting *Minnesota v. Olson*, 495 U.S. 91, 98 (1990))).

privacy. *United States v. Hayes*, 551 F.3d 138, 143 (2d Cir. 2008); *see Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). We have held that a person does not have a reasonable expectation of privacy in the common areas of multi-unit buildings. *See United States v. Holland*, 755 F.2d 253, 255–56 (2d Cir. 1985) (discussing *Katz*).

The apartment complex in which Clark lived had multiple street-level doors, each of which provided access to one or more different apartments. On the morning of the search, the officers opened the unlocked street level door that Clark used and entered the hallway that led to his apartment upstairs. The district court credited Clark's statement that it was not atypical for the door to be unlocked and that friends and members of the public, such as deliverymen, often accessed his apartment front door through use of the hallway. Indeed, there was no doorbell or knocker on the outside door that a visitor could use to indicate to Clark that they were there.

In light of the district court's finding that members of the public often had free access to the hallway, we conclude that Simmonds did not have a reasonable expectation of privacy in the hallway. *See Holland*, 755 F.2d at 256 (finding that an individual did not have a reasonable expectation of privacy in a hallway because "on any given day . . . [he] reasonably might expect to meet the landlord or his agents, . . . deliverymen, tradesmen, or one or more visitors to [an] apartment"). Therefore, the district court did not err in denying Simmonds's motion to suppress on this ground.

Simmonds also challenges the search on Fourth Amendment grounds on the basis that Clark's consent to search the apartment was not voluntary because Clark opened the door in response to a demand under color of authority and because Clark was intoxicated when he gave consent. Neither of these arguments warrants a reversal of the district court's denial of the motion to suppress.

A warrantless search does not violate the Fourth Amendment if "the authorities have obtained the voluntary consent of a person authorized to grant such consent." *United States v.*

8

*Elliott*, 50 F.3d 180, 185 (2d Cir. 1995). However, where consent is "granted only in submission to a claim of lawful authority," the consent is not considered voluntary. *United States v. Isiofia*, 370 F.3d 226, 233 n.2 (2d Cir. 2004) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973)).

When the officers reached Clark's apartment door, Detective LaChance knocked on the door and Clark responded, "come in." LaChance knocked again after ten to fifteen seconds and shouted "Rutland City Police" and asked Clark to open the door. Clark did not recall the request to open the door, but he testified that he went and opened it voluntarily. The district court found that LaChance credibly testified that the officers received verbal consent to enter the apartment and written consent when they entered the kitchen and before the search took place. The district court considered the fact that Clark described his memory of the events as "hazy" and "a little foggy" and Clark's statement that he may have been under the influence of crack cocaine at the time. But the court found that LaChance credibly testified that Clark was very calm, cooperative, and able to answer the agents' questions. Agent Desisto also credibly testified that Clark was coherent and did not appear drunk. Clark's speech was not slurred and his eyes were not glassy.

Relying heavily on our decision in *United States v. Taylor*, 745 F.3d 15 (2d Cir. 2014), Simmonds also argues that the record shows that Clark was so intoxicated that he fell asleep "immediately" while the apartment was being searched, suggesting that Clark was too intoxicated to give consent. In *Taylor*, we found that a defendant's post-arrest statements to law enforcement were not voluntary in part because he "fell asleep repeatedly during questioning and was only intermittently alert." *Id.* at 20. Here, however, the officers credibly testified that Clark was coherent and able to answer their questions. Specifically, LaChance testified that he did not observe signs of impairment and that Clark's answers to questions "were clear and he seemed to understand what we were talking about." A close look at the testimony corroborates LaChance's description of Clark's demeanor on the night of the search.

9

Because the record supports a conclusion that Clark voluntarily opened the door after the officers knocked and that he consented to the search verbally and in writing, we conclude that Simmonds's Fourth Amendment rights were not violated. Accordingly, the district court did not err in denying Simmonds's motion to suppress on this ground.

We have considered all of Simmonds's remaining arguments on this appeal and find that they lack merit. For these reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

10